Matthew Fenn HILTON, et al.,
Plaintiffs and Appellants,

v.

Mirvin D. BORTHICK, et al.,
Defendants and Appellees.

No. 20040.

Supreme Court of Utah.

Nov. 16, 1989.

Rehearing Denied May 30, 1990.

Robert J. DeBry, Phillip B. Shell, Joseph Rust, Charles Hanna, Ricardo B. Ferrari, Clarence J. Frost, Salt Lake City, for plaintiffs and appellants.

David L. Wilkinson, Stephen J. Sorenson, Paul M. Warner, Salt Lake City, for defendants and appellees.

DURHAM, Justice:

This case is a consolidation of three separate actions filed by investors in an insolvent finance company taken over in 1980 by the Utah State Department of Financial Institutions (the Department). Plaintiff Hilton and others appeal from a summary judgment granted on the ground of governmental immunity in favor of defendants Commissioner Borthick, the State of Utah, and the Department. Plaintiffs seek reversal of the summary judgment and a remand to the district court to allow the case to proceed to trial. We affirm.

Grove Finance Company (Grove) was incorporated in 1960 and licensed as a small loan business pursuant to the Small Loans Act. Utah Code Ann. §§ 7–10–1 to 7–10–24 (1953). The Small Loans Act was repealed in 1969 and replaced by the Utah Uniform Consumer Credit Code (UUCCC), codified as title 70B of Utah Code Annotated. Under the UUCCC, all small loan licenses were terminated and their holders were given the choice of becoming either a "supervised" or a "regulated" lender pursuant to Utah Code Ann. §§ 70B–3–501 to 70B–3–514 (1980). Grove surrendered its previous small loan license and was granted a new license as a supervised lender under the UUCCC. From 1969 to 1980, Grove filed annual financial reports with the Department as required by section 70B–3–505(2). In its annual examinations, the Department found no violation of statutory provisions or evidence of improper dealing.

In mid–1977, Grove began selling debentures. Grove was properly registered with the Utah Securities Commission to sell debentures; however, some inquiries received by the Department indicated that Grove had represented to purchasers that the debentures were insured. The Department contacted Grove to investigate, and Grove's chief executive officer assured the Department that the problem was a result of misstatements by the sales representatives

and that complainants would receive a full refund.

In response to a complaint received in March 1980, the Department sent examiners to Grove. Using Grove's books and records, they were unable to verify the annual information submitted by Grove to the Department. The Department issued a cease and desist order directing Grove to stop further sales of debentures and any other activities that would result in further obligation of Grove until a financial statement was completed. The Department then hired a certified public accounting firm to perform an independent audit of Grove's books and accounts. The auditors found that Grove's records pertaining to supervised loans were in accordance with generally accepted accounting principles. The auditors also found that Grove treated the debentures it had sold almost the same as deposit accounts, allowing deposits and withdrawals in varying amounts at irregular intervals.

In July 1980, the Department determined that Grove employees were not obeying the cease and desist order and were making inaccurate representations as to the nature of Grove's business. Grove's officers consented to the entry of a court order granting possession of Grove's business and property to the Department. Grove filed a chapter 11 bankruptcy proceeding in August 1980, and jurisdiction over Grove's assets was assumed by the United States Bankruptcy Court.

This case is controlled by this Court's decision in *Gillman v. Department of Financial Institutions*, 782 P.2d 506 (1989). There, we determined that the Department of Financial Institutions was immune from suit for any failure to properly inspect or regulate pursuant to either title 7 or title 70B.

> This is because under both title 7 and title 70B of the Code, the only sanction the Department can impose on a licensed financial institution for misconduct of any kind is to suspend or revoke the financial institution's operating license. Because subsection 63–30–10(2) [of the Governmental Immunity Act] immunizes any injuries arising out of, *inter alia*, "the failure or refusal to issue, deny, suspend, or revoke, any ... license, certificate, approval, order, or similar authorization," any injury resulting from a Department action or inaction ultimately results from a failure to suspend or revoke [the institution's] license, an immune act.

*Id.* 782 P.2d at 511 (footnote omitted).

The defendants in this case are equally protected by subsection 63–30–10(2). We therefore affirm the judgment of the trial court.

HALL, C.J., and DAVIDSON, Court of Appeals Judge, concur.

HOWE, Associate Chief Justice: (Dissenting)

I dissent for the reasons set forth in my dissenting opinion in *Gillman v. Department of Financial Institutions*, 782 P.2d 506, 513 (Utah 1989).

The majority opinion in the instant case states:

> From 1969 to 1980, Grove filed annual financial reports with the Department as required by section 70B–3–505(2). In its annual examinations, the Department found no violation of statutory provisions or evidence of improper dealing.

Majority at 504–505. These statements need clarification. The annual financial report referred to above is simply "a composite annual report in the form prescribed by the administrator relating to all supervised loans made by [the licensee]." Utah Code Ann. § 70B–3–505(2) (1980). This annual report is not a report of the financial condition of the licensee which would reflect upon its solvency. When these reports were filed, the Department examined them, but the Department made no on-the-premises examination of Grove nor required any reports which would disclose its financial condition. The first examination by the Department of Grove's financial condition was not made until March 1980, eleven years after it commenced business as a supervised lender and three years after the Department knew that Grove was selling

debentures which it treated simply as passbook accounts.

It is the position of plaintiffs that the Department had the statutory duty to examine Grove periodically to determine its solvency as directed by Utah Code Ann. §§ 7–1–7 and 7–1–8 (1971) and by provisions of the Utah Uniform Consumer Credit Code § 70B–3–506(1)–(4) (1980).

I would reverse the summary judgment and remand the case to the trial court to determine the statutory duties, if any, of the Department to examine the financial condition of Grove and to supervise Grove and, if those duties are found, to determine whether the Department's failure constituted negligence.

STEWART, J., concurs in the dissenting opinion of HOWE, Associate C.J.

ZIMMERMAN, J., having disqualified himself, does not participate herein; DAVIDSON, Court of Appeals Judge, sat.