**Susan TAYLOR, on Behalf of her minor son Zachary TAYLOR, Plaintiff and Appellant,**

v.

**OGDEN CITY SCHOOL DISTRICT; and Marsha Leo, guardian of her minor son Trenton Leo, Defendants and Appellees.**

No. 930598–CA.

Court of Appeals of Utah.

Aug. 18, 1994.

Martin W. Custen, James R. Hasenyager, and Patrick F. Holden, Ogden, for appellant.

Jan Graham and Elizabeth King, Salt Lake City, for appellees.

Before BILLINGS, DAVIS and ORME, JJ.

## OPINION

DAVIS; Judge:

Susan Taylor appeals the trial court's entry of summary judgment in favor of defendant Ogden City School District (School District) on the basis of governmental immunity. We reverse.

## FACTS

The facts of this case are undisputed. On May 18, 1989, Trenton Leo grabbed Zachary Taylor's lunch ticket and dangled it over the toilet in the boys' bathroom at Highland Middle School, threatening to flush the ticket if Zachary got any closer. Zachary approached Trenton demanding his ticket and Trenton dropped it into the toilet. As Zachary retrieved the ticket, he splashed Trenton's face with water from the toilet. Trenton responded with a hard shove, and Zachary fell back into a plate glass window. The glass broke, severing the radial nerve and four tendons on Zachary's right hand.

Charges were filed against Trenton, and on October 17, 1989, the juvenile court found

the allegations supporting the charge of assault to be true. The court ordered that Trenton pay fines and restitution.

## PROCEDURAL BACKGROUND

Zachary's mother filed a complaint sounding in negligence against Trenton and the School District on January 12, 1990. In particular, she alleged that the School District was negligent in failing to shield the plate glass in the boys' bathroom or to replace it with safety glass. On November 3, 1992, the School District filed a motion for summary judgment claiming governmental immunity. The School District argued that while immunity is waived for negligent acts of government employees by Utah Code Ann. § 63-30-10 (1989), there is an exception pursuant to section 63-30-10(1)(b) if the injury arose out of an assault or battery. Therefore, because Trenton was found guilty of assault, the School District claims exemption from the waiver of immunity.

The trial court denied the School District's summary judgment motion on December 14, 1992. The School District responded with a motion to alter or amend the judgment pursuant to Rule 60 of the Utah Rules of Civil Procedure due to claimed errors in the trial court's factual findings. The court issued an amended ruling on February 9, 1993, determining that there was no factual basis for its earlier finding that the School District violated regulations prescribing safety glass in public buildings. Because there was no building code regulation mandating the use of safety glass in this case, the court ruled that the School District's decision regarding which glass to use was discretionary. Under Utah Code Ann. § 63-30-10(1)(a) (1989),[1] the exercise of a discretionary function qualifies as another exception to the general waiver of immunity for negligent acts. The court felt there was a "causal nexus between the acts governed by both [section] 63-30-10(1)(a) and [Utah Code Ann. § 63-30-9 (1989)],"

that is, the defective or dangerous condition in the government building—covered by section 9—was caused by negligence of a government employee—covered by section 10, therefore "immunity waived under section 9 would be restored under section 10." In addition, the court held that the assault and battery exception in section 10(1)(b)[2] would also apply to the waiver of immunity in section 9. The trial court's amended ruling was based upon the legislature's alleged "clarification" of the interaction between section 9 and section 10 in the 1991 amendments, as well as Utah Supreme Court case law. For these reasons, the trial court reversed its earlier decision and granted summary judgment for the School District. This appeal followed.

## ISSUE

The sole issue on appeal is whether, prior to the 1991 amendments to the Utah Governmental Immunity Act, the exceptions to the waiver of immunity for negligence of government employees contained in Utah Code Ann. § 63-30-10(1)(a) (1989) (discretionary function) and *id.* § 63-30-10(1)(b) (assault and battery) applied to the waiver of immunity for defective or dangerous conditions in government buildings found in *id.* § 63-30-9 (1989).[3]

## STANDARD OF REVIEW

Summary judgment is appropriate where there are no disputes regarding material facts and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Higgins v. Salt Lake County*, 855 P.2d 231, 235 (Utah 1993); *accord State Farm Fire & Casualty Co. v. Geary*, 869 P.2d 952, 954 (Utah App.1994). We review legal determinations for correctness, according no deference to the trial court. *Higgins*, 855 P.2d at 235; *Geary*, 869 P.2d at 954.

1. This section was redesignated as § 63-30-10(1) pursuant to the 1990 amendments to the statute. *See* Utah Code Ann. § 63-30-10(1) (1993).

2. This section was redesignated as § 63-30-10(2) pursuant to the 1990 amendments to the statute. *See* Utah Code Ann. § 63-30-10(2) (1993).

3. The School District also raises the issue of tort liability. Given the posture of the case before the trial court, we decline to reach this issue.

## ANALYSIS

In order to determine whether the School District is immune from suit under the Utah Governmental Immunity Act, we employ the analytic model set forth in *Ledfors v. Emery County School District*, 849 P.2d 1162, 1164 (Utah 1993). *Accord Petersen v. Board of Educ. of Davis County Sch. Dist.*, 855 P.2d 241, 243 (Utah 1993); *Smith v. Weber County Sch. Dist.*, 877 P.2d 1276, 1279 (Utah App.1994). This model consists of three questions:

First, was the activity the entity performed a governmental function and therefore immunized from suit by the general grant of immunity contained in section 63–30–3? Utah Code Ann. § 63–30–3 (1989) (now codified at § 63–30–3(1)). Second, if the activity was a governmental function, has some other section of the Act waived that blanket immunity? Third, if the blanket immunity has been waived, does the Act also contain an exception to that waiver which results in a retention of immunity against the particular claim asserted in this case?

*Ledfors*, 849 P.2d at 1164.

The first question is not at issue. Taylor concedes that the School District performs a governmental function. The second question is also not really at issue because the School District does not meaningfully rebut Taylor's assertion that a waiver of blanket immunity is provided by Utah Code Ann. § 63–30–9 (1989). At the time the cause of action in this case accrued, section 63–30–9 provided:

Immunity from suit of all governmental entities is waived for any injury caused from a dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement. Immunity is not waived for latent defective conditions.

*Id.*

Thus, the focus of this appeal concerns the third question of the *Ledfors* test—

whether there are exceptions to the section 63–30–9 waiver resulting in retention of immunity. Taylor contends that the trial court erred in looking beyond the one express limitation on the section 63–30–9 waiver—latent conditions—and determining that the discretionary function and assault exceptions in section 63–30–10 were applicable to section 63–30–9.[4] Section 63–30–10 states in relevant part:

(1) Immunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission of an employee committed within the scope of employment except if the injury:

(a) arises out of the exercise or performance or failure to exercise or perform a discretionary function, whether or not the discretion is abused; or

(b) arises out of an assault, battery

. . . .

*Id.* § 63–30–10(1).

The Utah Governmental Immunity Act, as it existed prior to the 1991 amendments, is silent regarding the relationship between section 63–30–9 and section 63–30–10, and the parties have not cited any legislative history focusing on this issue. The Utah Supreme Court first addressed the issue of whether the exceptions listed in section 63–30–10 may apply to other sections of the Act in *Velasquez v. Union Pacific Railroad*, 24 Utah 2d 217, 469 P.2d 5 (1970). The appellant in *Velasquez* was a passenger in a pickup truck that was hit by a Union Pacific train. Appellant sued the State of Utah Public Service Commission, alleging that the section 63–30–8 waiver of immunity applied. Section 63–30–8 waived immunity for injury caused by, inter alia, a defective, unsafe, or dangerous condition of any highway. Utah Code Ann. § 63–30–8 (1989). Appellant claimed that the highway was defective in that the railroad crossing did not have proper warning devices to adequately alert motorists. The supreme court held that even if the failure to adequately warn motorists of the presence of trains were a "defect" pursuant

---

4. The trial court did not rule on the issue of whether the § 63–30–9 exception in the case of "latent defective conditions" was applicable in this case. In addition, we see no merit to this

issue and do not address it. *State v. Carter*, 776 P.2d 886, 896 (Utah 1989); *State v. Vigil*, 840 P.2d 788, 795 (Utah App.1992), *cert. denied*, 857 P.2d 948 (Utah 1993).

to section 63–30–8, the exception in section 63–30–10 for discretionary functions precluded appellant's action. Therefore, *Velasquez* suggests that an exception in section 63–30–10 can apply to the other waivers of immunity.[5]

Notwithstanding *Velasquez*, in *Sanford v. University of Utah*, 26 Utah 2d 285, 488 P.2d 741 (1971), the Utah Supreme Court took an apparently different position with respect to the applicability of the section 63–30–10 exceptions to other waivers. In *Sanford*, appellant sued the University for extensive water damage to her house that occurred after some construction projects by the University changed the direction of water drainage in the area. Appellant claimed that the State had waived immunity pursuant to section 63–30–8 (defective condition of a street) and section 63–30–9 (defective condition of any public structure). The State responded that two exceptions to section 63–30–10 (discretionary function and failure to inspect) resulted in a retention of immunity.

The supreme court held, without mentioning *Velasquez*, that

> [s]ince the waiver of immunity in [sections] 8 and 9 encompasses a much broader field of tort liability than merely negligent conduct of employees within the scope of their employment, *the legislature could not have intended that [section] 10, including its exceptions, should modify [sections] 8 and 9, even though it be conceded that the negligent conduct of an employee might be involved in an action for injuries caused by the creation or maintenance of a dangerous or defective condition.*

*Id.* at 745. Therefore, after *Sanford*, it appeared that the supreme court had overruled its holding in *Velasquez* sub silentio.

In *Bigelow v. Ingersoll*, 618 P.2d 50 (Utah 1980), superseded by rule on other grounds as stated in *Workman v. Nagle Construction, Inc.*, 802 P.2d 749 (Utah App.1990), the supreme court apparently returned to the position, again sub silentio, that the section 63–30–10 exceptions applied to other waivers.

*Bigelow* arose out of a collision between two cars at a Salt Lake City intersection. The appellants claimed that the accident was due to the State's negligence regarding design, construction, and maintenance of the traffic control lights at the intersection. They further claimed that the State had waived immunity pursuant to section 63–30–8 (waiving immunity for injury caused by a defective, unsafe or dangerous condition of any road, street, etc.). The State argued that immunity was retained under the exception in section 63–30–10 for negligent acts committed in the exercise of a discretionary function.

The *Bigelow* court did not summarily dismiss the State's governmental immunity argument on the basis of *Sanford* by holding that section 63–30–10's exceptions do not apply to other waivers. Nor did the court reaffirm the *Velasquez* holding that the section 63–30–10 exceptions *do* apply to other waivers. Instead, the court found that the facts in *Bigelow* did not involve a discretionary function. Therefore, the trial court "inappropriately applied" the defense of section 63–30–10(1) and the supreme court reversed and remanded the case. *Id.* at 54. The court weighed the merits of whether a discretionary function was exercised, suggesting application of that exception to section 63–30–8, instead of simply dismissing the State's argument based on *Sanford*. Thus, it appears that the holding in *Sanford* was seriously undermined. Further, in a footnote to the *Bigelow* opinion, the court apparently limited *Sanford* to its facts and noted that the *Sanford* court was "dealing with a case for relief [private nuisance] that was not necessarily founded on negligence." *Id.* at 54 n. 3.

The analysis does not conclude with *Bigelow*. *Bigelow* defined the discretionary function exception under section 63–30–10(1) as " 'confined to those decisions and acts occurring at the "basic policy making level." ' " *Id.* at 53 (quotation omitted). The *Bigelow* court then concluded that "the design of the traffic control system does not involve the

5. The portion of the *Velasquez* holding stating that a determination regarding the type of warning devices which should be required at railroad crossings involved the exercise of a discretionary function as opposed to an operational decision was expressly reaffirmed in *Duncan v. Union Pacific Railroad*, 842 P.2d 832, 835 (Utah 1992).

'basic policy making level' ... [and] in light of the foregoing, ... the defense of [section] 63–30–10(1) was inappropriately applied to this cause of action." *Id.* at 53–54. Relying upon *Bigelow,* a subsequent Utah Supreme Court case took the position that "[t]his court [in *Bigelow* ] supported the plaintiffs' posture that [section 63–30–10] did not modify the waiver of immunity governed by section 63–30–8 *and* that the activities complained of did not involve decisions made at the 'basic plan-making level' so as to render the state immune from suit." *Richards v. Leavitt,* 716 P.2d 276, 278 (Utah 1985) (emphasis added). Thus, the *Leavitt* court appears to have reaffirmed the *Sanford* holding that the exceptions to section 63–30–10 do not apply to section 63–30–8.[6]

We are unable to reconcile *Velasquez, Sanford, Bigelow,* and *Leavitt.*[7] However, our review of these cases leads us to conclude that, under the facts of this case, *Sanford* is the clearest pronouncement on the interaction between section 63–30–10 and section 63–30–9 prior to the 1991 amendments, and that *Sanford* has not been definitively overruled or limited. Accordingly, applying the reasoning in *Sanford,* we rule that the trial court incorrectly applied the exceptions in section 63–30–10 to section 63–30–9.

█ Finally, the School District also urges that we uphold the trial court's award of summary judgment based upon retroactive application of the 1991 amendment to section 63–30–9. Effective April 29, 1991, section 63–30–9 was amended to read:

> *Unless the injury arises out of one or more of the exceptions to waiver set forth in Section 63–30–10,* immunity from suit of all governmental entities is waived for any injury caused from a dangerous or defective condition of any public building, struc-

ture, dam, reservoir, or other public improvement.

Utah Code Ann. § 63–30–9 (1993) (emphasis added). The trial court viewed the amendment as demonstrating "the obvious intent of the legislature in 1991 to clarify the ambiguity that exists in these kinds of cases."

The trial court noted correctly that the legislature characterized the 1991 amendments to the Act as "clarifying the scope and coverage of governmental immunity; and making technical corrections." *See* preface to 1991 Utah Laws chapter 76. However, section 11 of the Act states that "[t]his act has prospective effect only and any changes to the law caused by this act do not apply to any claims based upon injuries or losses that occurred before the effective date of this act." *Id.* § 11.

Further, while it is correct that an amendment clarifying a statutory scheme may be retroactively applied, *In re J.P.,* 648 P.2d 1364, 1369 n. 4 (Utah 1982), if the amendment "provides defendants with *any* greater degree of immunity ... than that previously provided ... it is a substantive change from the law as it existed ... and cannot be applied retroactively." *Rocky Mountain Thrift Stores v. Salt Lake City Corp.,* 784 P.2d 459, 462 (Utah 1989); *accord State v. Burgess,* 870 P.2d 276, 280 n. 6 (Utah App. 1994). Retroactive application of the 1991 version of section 63–30–9 would provide the School District with a greater degree of immunity, and therefore constitute a "substantive change from the law as it existed." Accordingly, to the extent the trial court retroactively applied the 1991 amendment to section 63–30–9, it was in error.

## CONCLUSION

After review of the leading Utah Supreme Court cases on the interaction between the

---

**6.** In the wake of *Bigelow* and *Leavitt,* this court has taken the position in dicta that "[t]his separate waiver provision [section 63–30–8] is not subject to the 'discretionary function' exception in section 63–30–10(1)." *Gleave v. Denver & Rio Grande W. R.R.,* 749 P.2d 660, 667 n. 6 (Utah App.), *cert. denied,* 765 P.2d 1278 (Utah 1988). The court cited *Sanford, Leavitt,* and the footnote in *Bigelow* referring to *Sanford* as support for this contention.

In *Duncan v. Union Pacific Railroad,* 790 P.2d 595, 603 (Utah App.1990) (Jackson, J., concur-

ring), *aff'd,* 842 P.2d 832 (Utah 1992), Judge Jackson again expressed the view that the exceptions in § 63–30–10 do not apply to the other waivers.

**7.** As this court recently noted, "there has been some confusion concerning the interplay of specific waivers of immunity and the retained immunity in section 63–30–10." *Smith v. Weber County Sch. Dist.,* 877 P.2d 1276, 1280 n. 5 (Utah App.1994).

exceptions to the waiver of governmental immunity provided in section 63–30–10 and the other waivers of immunity prior to 1991, we have determined that the analysis in *Sanford v. University of Utah,* 26 Utah 2d 285, 488 P.2d 741 (1971), is applicable to the facts of this case. *Sanford* holds that the exceptions to section 63–30–10 are not applicable to section 63–30–9. The trial court in the case at bar erred by granting summary judgment to the School District on the basis that the assault and the discretionary function exceptions applied to section 63–30–9 prior to 1991. In addition, to the extent the trial court gave retroactive application to the 1991 amendment to section 63–30–9, the trial court erred. Therefore, we reverse and remand for further proceedings consistent with this opinion.

BILLINGS and ORME, JJ., concur.