Susan TAYLOR on Behalf of Her Minor Son Zachary TAYLOR, Plaintiff and Respondent,

v.

OGDEN CITY SCHOOL DISTRICT, Defendant and Petitioner.

No. 940450.

Supreme Court of Utah.

Nov. 15, 1996.

James R. Hasenyager, Ogden, for plaintiff.

Jan Graham, Attorney Gen., Brent A. Burnett, Asst. Attorney Gen., Salt Lake City, for defendant.

RUSSON, Justice:

Susan Taylor brought this action on behalf of her minor son Zachary Taylor, seeking monetary relief for injuries he suffered after

he was pushed into an allegedly unsafe window at Highland Middle School in Ogden City, Utah. The trial court granted the Ogden City School District's motion for summary judgment, holding that Taylor's claims were barred by the Utah Governmental Immunity Act, specifically, Utah Code Ann. § 63–30–10 (1989). We affirm.

## BACKGROUND

This action arises out of an accident that occurred at Highland Middle School, which is in the Ogden City School District (the District). The parties agree that the District is a governmental entity and that the maintenance of the middle school is a governmental function.

The accident happened on May 18, 1989. Zachary Taylor and Trenton Leo, students at the middle school, were involved in a scuffle in a restroom. At one point, Trenton pushed Zachary into a glass window. Zachary's hand was forced through the glass, resulting in nerve and tendon damage. Although the glass cut Zachary's hand, the window was not in violation of building codes or safety regulations, and the parties agree that it did not present a blatant design defect.

Trenton was charged with assault and tried in juvenile court on October 17, 1989. The juvenile court found the allegations of assault to be true and ordered Trenton to pay a fine and restitution.

On January 12, 1990, Susan Taylor filed this lawsuit on behalf of her son. She asserted a claim against the District for negligent failure to install safety glass in the window of

the bathroom or institute some other safety measure that would have prevented her son's accident.[1] Taylor's action against the District was predicated on section 63–30–9 of the Utah Code before its 1991 amendments. The statute provided:

Immunity from suit of all governmental entities is waived for any injury caused from a dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement. Immunity is not waived for latent defective conditions.[2]

Subsequently, the District moved for summary judgment, asserting that it was governmentally immune from liability. The District argued that it was immune from Taylor's suit under section 63–30–10(1)(b) of the Utah Code, which provided at the time of the accident:

Immunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission of an employee committed within the scope of employment except if the injury:

. . . ;

(b) arises out of assault . . . [.][3]

The District argued that Zachary's injury was caused by Trenton's assault upon him and it was therefore immune from liability for Zachary's injuries.

The District's motion was ultimately granted.[4] The trial court based its ruling on two grounds. First, it held that the District was immune from suit because Zachary's injuries arose out of an assault committed upon him by Trenton. Second, the trial court found

1. Taylor also asserted a claim against Marsha Leo, Trenton's mother, but that claim is not involved here.

2. Following the 1991 amendments, section 63–30–9 now provides:
   Unless the injury arises out of one or more of the exceptions to waiver set forth in Section 63–30–10, immunity from suit of all governmental entities is waived for any injury caused from a dangerous or defective condition of any public building, structure, dam, reservoir, or other public improvement.

3. The assault exception now provides:
   Immunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission of an employee

committed within the scope of employment except if the injury arises out of, in connection with, or results from:
   . . . ;
   (2) assault . . . [.]
Utah Code Ann. § 63–30–10(2) (Supp.1996).

4. Initially, the trial court denied the motion due to its misconception that the restroom window was in violation of the Uniform Building Code as adopted in Utah. After the District demonstrated in its motion for reconsideration that the District had not violated the building code, the trial court amended its prior ruling and granted the District's motion for summary judgment.

that the District was immune from liability under section 63–30–10(1)(a) of the Utah Code, which provided at the time of the accident:

Immunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission of an employee committed within the scope of employment except if the injury:

(a) arises out of the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused[.][5]

The court ruled that the District's decision regarding the type of glass to use was discretionary because there was no building code regulation mandating the use of safety glass for the bathroom window. Thus, the trial court held that under the assault and discretionary function exceptions to governmental waiver of immunity enumerated in section 63–30–10, the District was immune from Taylor's suit predicated on section 63–30–9.

Taylor appealed to this court, which transferred the case to the Utah Court of Appeals pursuant to section 78–2–2(4) of the Utah Code. The court of appeals reversed the trial court's ruling, holding that the retentions of immunity under section 63–30–10 were inapplicable to the waiver of immunity set forth in section 63–30–9. *Taylor v. Ogden City Sch. Dist.*, 881 P.2d 907, 912 (Utah.Ct.App. 1994). The court of appeals explained that the exceptions in section 63–30–10 were intended to apply only to injuries proximately caused by negligence, not injuries caused by dangerous conditions in public buildings under section 63–30–9. *Id.* at 911–12. Thus, the court of appeals held that "[t]he trial court ... erred by granting summary judgment to the ... District on the basis that the assault and the discretionary function exceptions applied to section 63–30–9 prior to 1991." *Id.* at 913.

The District petitioned for certiorari, which this court granted on November 27, 1994. *Taylor v. Ogden City Sch. Dist.*, 890 P.2d 1034 (Utah 1994). After the petition was granted, this court decided *Keegan v. State of Utah*, 896 P.2d 618 (Utah 1995). There we held that "the discretionary function exception set forth in section 63–30–10 does apply to cases brought under section 63–30–8," which waives immunity for injuries caused by dangerous or defective conditions on roadways. *Id.* at 623. On the basis of this ruling, this court summarily reversed the court of appeals' ruling in *Taylor* that the exceptions in section 63–30–10 did not apply to the waiver in section 63–30–9. *Taylor v. Ogden City Sch. Dist.*, 902 P.2d 1234, 1234 (Utah 1995) (per curiam).

This holding left undecided the issues of whether the discretionary function exception or the assault exception applied to the facts of this case. Rather than remanding the case to the court of appeals to resolve these issues, this court retained jurisdiction and directed the parties to brief the following issues:

(1) Whether the injuries allegedly suffered by plaintiff "arose out of" the assault and battery exception to the waiver of immunity in Utah Code Ann. § 63–30–10(2) or whether those injuries arose out of the alleged negligence of defendant's having failed to install safety plate glass.

(2) Whether, assuming that the alleged injuries suffered by plaintiff arose out of defendant's negligence, in whole or in part, rather than out of an assault and battery, defendant's failure to install safety plate glass was a ministerial or a discretionary function under § 63–30–10(1).

*Id.* Having been fully briefed by the parties, we now proceed to review the basis for the trial court's summary judgment in favor of the District.

5. The discretionary function exception now provides:

Immunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission of an employee committed within the scope of employment except if the injury arises out of, in connection with, or results from:

(1) the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused[.]

Utah Code Ann. § 63–30–10(1) (Supp.1996).

## STANDARD OF REVIEW ·

■ Summary judgment is proper only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Utah R. Civ. P. 56(c); *Higgins v. Salt Lake County,* 855 P.2d 231, 235 (Utah 1993). Because we resolve only legal issues on appeal from a summary judgment, we do not defer to the trial court's conclusions of law but review them for correctness. *Ferree v. State,* 784 P.2d 149, 151 (Utah 1989); *accord Higgins,* 855 P.2d at 235. On appeal, "[w]e determine only whether the trial court erred in applying the governing law and whether the trial court correctly held that there were no disputed issues of material fact." *Ferree,* 784 P.2d at 151; *Bowen v. Riverton City,* 656 P.2d 434, 436 (Utah 1982).

## ANALYSIS

To determine whether a governmental entity is immune from suit under the Utah Governmental Immunity Act (the Act), three questions must be answered:

(1) Was the activity undertaken by the entity a governmental function and therefore immunized from suit under the general grant of immunity contained in Utah Code Ann. § 63–30–3?

(2) If the activity undertaken was a governmental function, has another section of the Act waived that blanket immunity?

(3) If immunity has been waived, does the Act contain an exception to that waiver resulting in a retention of immunity against the claim asserted?

*Keegan v. State of Utah,* 896 P.2d 618, 619–20 (Utah 1995) (citing *Ledfors v. Emery County Sch. Dist.,* 849 P.2d 1162, 1164 (Utah 1993)).

In this case, the first two questions are not in dispute. Both parties agree that the District is a governmental entity and that maintenance of a school is a governmental function. In addition, the parties agree that a section of the Act, section 63–30–9, has waived the District's blanket immunity.

However, the parties disagree as to whether the Act provides an exception to the waiver provisions of section 63–30–9 that results in the District's retaining immunity from Taylor's claims. The District contends that both the assault and the discretionary function exceptions of section 63–30–10 apply to the facts of this case. Taylor argues that they do not.

With regard to the assault exception of section 63–30–10(1)(b), Taylor maintains that this exception should not apply where, as in this case, the injuries have a greater link to a dangerous and defective condition in a public building than to the assault and where the assault was unrelated to the conduct of a government employee. The District responds that the exception should apply because Zachary was injured as a direct result of Trenton's assault upon him and, therefore, Zachary's injuries must be said to have "ar[isen] out of [an] assault." Utah Code Ann. § 63–30–10(1)(b) (1989).

■ In analyzing the parties' positions, we must keep in mind that "the legislature has recognized the necessity of immunity as essential to the protection of the state in rendering the many and ever increasing number of governmental services." *Epting v. State,* 546 P.2d 242, 243 (Utah 1976). In a prefatory section of the Act, the legislature made this abundantly clear:

> *Except* as may be otherwise provided in this chapter, *all governmental entities are immune from suit for any injury* which results from the exercise of a governmental function.

Utah Code Ann. § 63–30–3 (1989) (emphasis added). As this court explained in *Holt v. Utah State Road Commission,* 30 Utah 2d 4, 6, 511 P.2d 1286, 1288 (1973), *overruled on other grounds, Colman v. Utah State Land Board,* 795 P.2d 622 (Utah 1990), "This . . . indicate[s] an intention that the act be strictly applied to preserve sovereign immunity." We will therefore apply the assault exception accordingly.

■ The assault exception retains immunity from suit "if the injury . . . arises out of assault." Utah Code Ann. § 63–30–10(1)(b) (1989). In applying this exception, we assume that "each term . . . was used advisedly; thus the . . . words are read literally, unless such a reading is unreasonably con-

fused or inoperable." *Savage Indus., Inc. v. Utah State Tax Comm'n,* 811 P.2d 664, 670 (Utah 1991). The issue in this case is whether Zachary's injuries "ar[ose] out of" Trenton's assault.

In ordinary usage, the words "arises out of" import a concept of causation. " 'The term "arising out of" is ordinarily understood to mean originating from, incident to, or connected with the item in question.' " *National Farmers Union Property & Cas. Co. v. Western Cas. & Sur. Co.,* 577 P.2d 961, 963 (Utah 1978) (quoting *Rouse v. Greyhound Rent–A–Car, Inc.,* 506 F.2d 410, 414 (5th Cir.1975)).

> "[T]he words 'arising out of' are very broad, general and comprehensive. They are commonly understood to mean originating from, growing out of, or flowing from, and require only that there be some causal relationship between the injury and the risk [provided for]."

*Id.* (quoting *Lawver v. Boling,* 71 Wis.2d 408, 238 N.W.2d 514, 518 (1976)); *see also Murdock v. Dinsmoor,* 892 F.2d 7, 8 (1st Cir. 1989); *Orsini v. Industrial Comm'n,* 117 Ill.2d 38, 109 Ill.Dec. 166, 169, 509 N.E.2d 1005, 1008 (1987). Thus, for the District to be immune from liability for Zachary's injuries, the injuries must have had some causal link to the assault upon him. In other words, his injuries must have originated from, grown out of, or flowed from the assault.

Strict application of the literal meaning of the assault exception reveals a sufficient causal link between Zachary's injuries and the assault perpetrated upon him. The uncontroverted facts show that the nerve and tendon damage to Zachary's hand was the result of his being shoved into the window by a fellow student. Thus, Zachary's injuries originated from, grew out of, and flowed from Trenton's violent conduct. Moreover, it is undisputed that Trenton's actions amounted to an assault. He was charged with and convicted of assault in juvenile court. Therefore, Zachary's injuries arose out of the assault.

■ Taylor maintains that the assault exception should not apply because Zachary's injuries have a greater link to the dangerous window in the restroom than to Trenton's assault. However, "arises out of" within the assault exception " 'is a phrase of much broader significance than "caused by." ' " *National Farmers Union,* 577 P.2d at 963 (quoting *Hartford Accident & Indem. Co. v. Civil Serv. Employees Ins. Co.,* 33 Cal. App.3d 26, 108 Cal.Rptr. 737, 741 (1973)). Under the phrase's ordinary meaning, the assault need not be the sole cause of the injury to except the governmental entity from liability for the injury. *See id.* The language demands " 'only that there be *some* causal relationship between the injury and the risk' " provided for. *Id.* (emphasis added) (quoting *Lawver,* 238 N.W.2d at 518). In this case, there is undoubtedly "some" causal relationship between Zachary's injury and Trenton's assault upon him. But for the assault, Zachary's injuries would not have occurred.

■ Taylor also argues that the assault exception should not apply because the assault was unrelated to the actions of government employees. Taylor contends that section 63–30–10 of the Utah Code does not apply to the actions of nonemployees because the statute refers to employees, but nowhere does it refer to the conduct of nongovernment employees. In so arguing, Taylor attempts to distinguish this case from this court's previous decisions holding governmental entities immune from suit under the assault exception even though the assault was committed by a nongovernment employee. *See Tiede v. State,* 915 P.2d 500, 502–03 (Utah 1996); *Malcolm v. State,* 878 P.2d 1144, 1146–47 (Utah 1994); *S.H. v. State,* 865 P.2d 1363, 1364–65 (Utah 1993); *Higgins v. Salt Lake County,* 855 P.2d 231, 240–41 (Utah 1993); *Ledfors v. Emery County Sch. Dist.,* 849 P.2d 1162, 1165–67 (Utah 1993). Taylor contends that in each of these cases, the negligence of a government employee or entity caused the assault that resulted in the injury. *See, e.g., Tiede,* 915 P.2d at 501 (plaintiffs alleged that State was negligent in failing to apprehend escaped convicts who, while fugitives, killed plaintiffs' relatives). Taylor argues that in this case, there is no such allegation and, therefore, these cases should not control.

However, the difference Taylor points out between this case and this court's previous cases concerning assaults perpetrated by nongovernment assailants is inconsequential. In many of those cases, this court found the allegations of negligence on the part of the governmental entity immaterial. We concluded that such allegations were merely "attempts to evade the statutory categories by recharacterizing the supposed cause of the injury" and were summarily rejected. *Tiede*, 915 P.2d at 502; *see also Malcolm*, 878 P.2d at 1146–47; *S.H.*, 865 P.2d at 1365; *Petersen v. Board of Educ. of Davis County Sch. Dist.*, 855 P.2d 241, 243 (Utah 1993) (per curiam); *Ledfors*, 849 P.2d at 1166. The focus in those decisions was on the conduct of the assailants and whether their actions amounted to assaults. *See Tiede*, 915 P.2d at 502–03; *Malcolm*, 878 P.2d at 1147; *Higgins*, 855 P.2d at 241; *Ledfors*, 849 P.2d at 1166–67. The conduct of the governmental entities played no part in the court's analyses or conclusions that because of the assailants' violence, the governmental entity was immune from suit. Thus, these decisions are controlling and demand that we reject Taylor's argument.

Taylor also argues that to the extent these decisions cannot be distinguished, they should be overturned. She argues that section 63–30–10 refers only to the conduct of government employees, not to the conduct of nongovernment employees. Thus, she concludes, the assault exception should apply only when a government employee commits the assault. However, our prior cases make clear that the statutory language of the assault exception places no importance on the status of the assailant. "[T]he [Act], especially section 63–30–10, focuses on the conduct or situation out of which the injury arose, not on the status of the party inflicting the injury." *S.H.*, 865 P.2d at 1365 (citing *Ledfors*, 849 P.2d at 1166); *see also Petersen*, 855 P.2d at 243.

This proposition is confirmed by subsections of section 63–30–10 that undoubtedly encompass conduct of those not affiliated with the government. For example, section 63–30–10(1)(g) (1989) excepts liability for injuries "aris[ing] out of or result[ing] from riots, unlawful assemblies, public demonstrations, mob violence, and civil disturbances." Section 63–30–10(1)(j) (1989) excepts liability if the injury "arises out of the incarceration of any person in any state prison, county, or city jail or other place of legal confinement." Thus, these subsections demonstrate that although section 63–30–10 does not specifically refer to the conduct of those not affiliated with the government, the legislature intended to retain immunity for certain injuries arising out of the conduct of such persons.

Finally, the fact that the assault exception is not expressly limited to assaults by government-affiliated persons requires that the exception include injuries caused by nongovernment assailants. The Act and this court's prior decisions demand that "the act be strictly applied to preserve sovereign immunity." *Holt*, 30 Utah 2d at 6, 511 P.2d at 1288; *see* Utah Code Ann. § 63–30–3 (1989). In the codification of the assault exception, "[n]othing suggests that the one committing the assault need be a governmental employee." *Higgins*, 855 P.2d at 240. Thus, applying the exception strictly to preserve sovereign immunity, its protective sweep must be applied to include assaults committed by nongovernment assailants.

We therefore hold that the trial court did not err in granting the District summary judgment. The undisputed facts show that the injury for which Taylor seeks compensation arose out of an assault, and the District is therefore immune from suit under the assault exception to the Act. Because we affirm the trial court's summary judgment on this ground, we need not decide whether the District qualifies for governmental immunity under the discretionary function exception.

## CONCLUSION

We conclude that the trial court correctly granted the District summary judgment pursuant to the assault exception of the Act. We therefore affirm.

ZIMMERMAN, C.J., and HOWE, J., concur in Justice RUSSON's opinion.

DURHAM, Justice, dissenting:

Relying on *Ledfors v. Emery County School District*, 849 P.2d 1162 (Utah 1993), and its progeny, the majority holds that section 63–30–10 of the Utah Code applies to acts of nongovernment employees. Having reexamined the rationale in that case as well as looking at the legislative history of the statute, I conclude that it was wrongly decided, and I would overrule it.

In *Ledfors*, this court interpreted Utah Code Ann. § 63–30–10(1)(b) (1989) as immunizing governmental negligence when the injuries allegedly caused by that negligence "arose out of" an assault or battery committed either by a state employee or by any third party. 849 P.2d at 1166. This court reasoned:

> The determinant of immunity is the type of conduct that produces the injury, not the status of the intentional tort-feasor whose conduct is the immediate cause of the injury. Indeed, our prior cases have never recognized the distinction . . .; instead, we have always looked only at the cause of the injuries, not at the status of the injurer.

*Id.* (citing *Hilton v. Borthick*, 791 P.2d 504, 505 (Utah 1989); *Gillman v. Department of Fin. Insts.*, 782 P.2d 506, 510–12 (Utah 1989); *Connell v. Tooele City*, 572 P.2d 697, 698–99 (Utah 1977); *Epting v. State*, 546 P.2d 242, 244 (Utah 1976)). What the *Ledfors* court failed to note, however, was that *Ledfors* was in fact the first case in this state to apply section 63–30–10(1)(b) when a private individual committed the assault and battery.[1] Hence, there was no reason for the court to be constrained by prior case law on this point, and we were mistaken when we implied otherwise.

In *Ledfors*, this court first observed that the language of section 63–30–10(1)(b) plainly

retained immunity for governmental entities where a *government* employee committed an assault or battery:

> We applied the plain language of this subpart in *Maddocks v. Salt Lake City Corp.*, 740 P.2d 1337 (Utah 1987), to bar a suit in which the plaintiff alleged that he was wrongfully arrested by three Salt Lake City police officers, one of whom unlawfully beat him while the others negligently failed to intervene. In that case, we held that the "plaintiff's negligence claim arises out of battery and false imprisonment and is therefore not the sort of claim for which immunity has been waived."

849 P.2d at 1165. Without further analysis or explanation, however, the *Ledfors* court stated that "[b]y analogy," immunity is also preserved where the assault or battery is committed by a private individual. *Id.* at 1166. However, nowhere in section 63–30–10(1)(b) does the statute explicitly indicate that it applies to the assault or battery by third parties who are not state officials. In effect, the court ignored the differences between government employees and private individuals, thereby broadening the Governmental Immunity Act to retain immunity for actions committed by an entirely different class of actors. Moreover, the *Ledfors* court, in reaching its decision, failed to conduct an independent analysis of the statute's language in the context of nongovernment employees and failed to examine the legislative intent.

Section 63–30–10(1)(b) provides:

> Immunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission *of an employee* committed within the scope of employment except if the injury:

---

1. *Ledfors* cited only cases that did not involve the granting of immunity on the basis of actions taken by private individuals. *See Hilton v. Borthick*, 791 P.2d 504, 505 (Utah 1989) (holding department of financial institutions, its commissioner, and state of Utah immune from claims of investors in insolvent finance company taken over by department pursuant to Utah Code Ann. § 63–30–10(2) (1953)); *Gillman v. Department of Fin. Insts.*, 782 P.2d 506, 510–12 (Utah 1989) (holding department of financial institutions immune from suits for claims alleging negligence in

failing to suspend or revoke licenses); *Maddocks v. Salt Lake City Corp.*, 740 P.2d 1337, 1340 (Utah 1987) (holding state immune from suit arising from police officer's beating of plaintiff); *Connell v. Tooele City*, 572 P.2d 697, 698–99 (Utah 1977) (holding city immune from suit for negligence of clerk in keeping records which resulted in false arrest); *Epting v. State*, 546 P.2d 242, 244 (Utah 1976) (holding state immune from suit under discretionary function or under exception to waiver for injuries arising out of incarceration of person in any state prison).

. . . ;

(b) arises out of assault . . . [.]

(Emphasis added.)[2] This section plainly waives immunity for governmental entities if their employees proximately cause injuries through a negligent act or omission. The section, however, makes an exception where the "injury proximately caused" by the employee "arises out of" an assault or battery. The majority properly adopts a very broad meaning of the phrase "arises out of," concluding that "arises out of" is as broad as "some" causal link.

This interpretation, however, compels the conclusion that the exception applies only to an assault or battery committed by a state official or government employee. If the "arises out of" language applies to any private individual, its very breadth could lead to absurd and unfair results. For instance, would the District be immune if Zachary Taylor, after being pushed, had fled 300 yards onto a negligently supervised school archery range and been subsequently pierced by an arrow? Certainly, there would still be "some" causal relationship between the assault and the injury. The more reasonable

conclusion is that the legislature wanted to immunize the state from liability for the intentional torts of its employees and used broad language to achieve this goal.

The majority supports its contrary interpretation with a structural argument, stating that the subsections of section 63–30–10 "undoubtedly encompass conduct of those not affiliated with the government." While this is true with respect to three subsections, subsections (1)(g), (1)(j), and (1)(k),[3] the remaining subsections are distinct and could reasonably apply only to the actions of government employees. Many of these subsections have in fact been applied only to government employees, and it is difficult to imagine a situation in which these subsections would apply to a private individual.[4] *See, e.g., DeBry v. Noble,* 889 P.2d 428, 434 (Utah 1995) (applying subsections (1)(c) and (1)(d) to building inspector); *Duncan v. Union Pac. R.R.,* 842 P.2d 832, 834–36 (Utah 1992) (applying successors to subsection (1)(a) to department of transportation); *Irvine v. Salt Lake County,* 785 P.2d 411, 413 (Utah 1989) (applying subsection (1)(a) to county employee); *Gillman,* 782 P.2d at 507–

2. As noted by the majority, following the 1991 amendments, section 63–30–10(1)(b) was recodified. The assault exception is now found in section 63–30–10(2), which now provides:

Immunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission of an employee committed within the scope of employment except if the injury arises out of, in connection with, or results from . . . :

. . . ;

(2) assault, battery . . . [.]

Utah Code Ann. § 63–30–10(2) (Supp.1996).

3. Utah Code Ann. § 63–30–10(1)(g) (1989) retains immunity for injuries which result from riots, unlawful assembly, public demonstrations, mob violence, and civil disturbances. Section 63–30–10(1)(j) retains immunity for injuries arising out of the incarceration of prisoners. Finally, section 63–30–10(1)(k) retains immunity for injuries arising out of any natural condition on publicly owned land.

4. Other subsections of Utah Code Ann. § 63–30–10(1) (1989) retain immunity where an injury arises out of

(a) the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused; or

. . . ;

(c) the issuance, denial, suspension, or revocation of or by the failure or refusal to issue, deny, suspend, or revoke any permit, license, certificate, approval, order, or similar authorization; or

(d) a failure to make an inspection or by making an inadequate or negligent inspection of any property; or

(e) the institution or prosecution of any judicial or administrative proceeding, even if malicious or without probable cause; or

(f) a misrepresentation by the employee whether or not it is negligent or intentional; or

. . . ;

(h) or in connection with the collection of and assessment of taxes; or

(i) the activities of the Utah National Guard; or

. . . ;

(1) the activities of:

(i) providing emergency medical assistance;

(ii) fighting fire; or

(iii) regulating, mitigating, or handling hazardous materials or hazardous wastes; or

(iv) emergency evacuations; or (m) research or implementation of cloud management or seeding for the clearing of fog.

08 (applying predecessor to subsection (1)(c) to department of financial institutions); *Velasquez v. Union Pac. R.R.*, 24 Utah 2d 217, 218–19, 469 P.2d 5, 6 (1970) (applying subsection (1)(a) to public service commission). With the three obvious exceptions of subsections (g), (j), and (k), all other subsections apply to functions or actions of government employees. Hence, the structure of sections 63–30–10(1)(a)–(m) suggests that all subsections apply only to state employees unless the language clearly implies otherwise, not the other way around as the majority suggests.

The exact meaning of section 63–30–10, as applied to government employees, is ambiguous. When we find ambiguity in a statute's plain language, we seek guidance from legislative history and relevant policy considerations.[5] *World Peace Movement v. Newspaper Agency Corp.*, 879 P.2d 253, 259 (Utah 1994). The legislative history of the Act, viewed in the context of its purposes, strongly suggests that the most reasonable interpretation of section 63–30–10(1)(b) is that the governmental entity retains immunity only where the injury is the result of an assault or battery committed *by a government employee.*

When the Utah Legislature considered the Governmental Immunity Act in 1963, courts in California, Arizona, and Nevada had already abolished sovereign immunity, resulting in a flood of lawsuits. *See* Floor Debate, Statement of Senator Charles Welch, 65th Utah Leg., Gen. Sess. (Feb. 11, 1965) (House recording No. 1, side 2) [hereinafter Welch Statement]. In 1963, the Utah Legislature formed the Governmental Immunity Committee to study the state's options in legislating laws governing governmental immunity.[6] *See* H.R.J. Res. 21, 35th Utah Leg., 1963 Utah Laws 685. When the legislature formed this committee, it was concerned about the "hardship" imposed on parties who are injured or whose property may be damaged by actions taken by governmental entities. *See id.; cf. Hansen v. Salt Lake County*, 794 P.2d 838, 844 (Utah 1990) ("There was (and is) no place in the structure of the Act for a *grant* of absolute immunity."). The careful balancing of these concerns led to the current Utah Governmental Immunity Act. *See* Floor Debate, Statement of Representative Ray Harding, 65th Utah Leg., Gen. Sess. (Feb. 11, 1965) (House recording No. 2, side 2) [hereinafter Harding Statement].

The Governmental Immunity Committee released its report in 1964, stating that it patterned its proposed bill after similar acts in California, Michigan, and the Federal Tort Claims Act. Utah Legislative Council, Report of the Governmental Immunity Committee, 67–68 (Dec.1964) (on file with State of Utah Office of Legislative Research and General Counsel). In evaluating available alternatives to governmental immunity, including the waiver of immunity for certain instances of tortious conduct, the committee stated:

---

5. The majority relies upon the statement in *Holt v. Utah State Road Commission*, 30 Utah 2d 4, 6, 511 P.2d 1286, 1288 (1973), *overruled on other grounds, Colman v. Utah State Land Bd.*, 795 P.2d 622 (Utah 1990), that the language of the Governmental Immunity Act "seems to indicate an intention that the act be strictly applied to preserve sovereign immunity; and to waive it only as clearly expressed therein." This court, however, has also stated that the Act should not be so strictly construed that it "emasculate[s] the purpose of the statute," which is to grant immunity in certain circumstances but to deny it in others. *Morrison v. Salt Lake City Corp.*, 600 P.2d 553, 555 (Utah 1979). Hence, the language the majority cites from *Holt* should not prevent the court from considering the statute's legislative history or purpose to determine whether the legislature intended to waive immunity in these circumstances.

6. This committee consisted of two representatives of the Utah Municipal League, two representatives of the County Officers' Association, two representatives of the public school districts, two representatives of special improvement districts, and two official representatives of the Utah State Bar. At-large members included the Utah attorney general, the chief counsel for the Utah Highway Department, an assistant Salt Lake City attorney, the Utah Insurance Commissioner, the president of the Utah Highway Users Conference, two state Senators, two state Representatives, and three standing members of the Utah Legislative Council. Thirty-eight percent of the committee were members of the Utah State Bar. Utah Legislative Council, Report of the Governmental Immunity Committee, 59 (Dec.1964) (on file with State of Utah Office of Legislative Research and General Counsel).

There was virtual unanimity that immunity of governmental entities should be waived in relation to responsibility for the *negligent acts or omissions of employees* (tort liability) with the exception of intentional or willful misdeeds, discretionary acts and certain other activities where it was felt that it is in the best interest of the public to exclude responsibility.

*Id.* at 61 (emphasis added). The committee, therefore, recommended that individuals should be able to sue the government for the negligence of its employees, retaining immunity only where its employees' acts or omissions were intentional or willful.

The operative language of the committee's proposed bill contained almost the exact language subsequently used in section 63–30–10(1)(b). The proposed bill stated:

Immunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission of an employee committed within the scope of his employment except if the injury:

. . .;

(2) arises out of assault, battery, false imprisonment, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, or interference with contract rights[.]

*Id.* at 92. The committee summarized this provision as a "[w]aiver of immunity *for negligent acts of employees, except:* . . . *(2) intentional torts.*" *Id.* at 68–69 (emphasis added). The report does not refer to the actions of nongovernment employees. In fact, the entire report seems to focus solely on the actions of government employees, not of private individuals.

The purpose of the Act as a whole also supports this interpretation. Senator Charles Welch told the House of Representatives that this bill allowed individuals to sue the government for its negligence "so as to make more justice." Welch Statement, *supra.* Senator Welch stated that it was "not moral" for citizens to be uncompensated for losses resulting from the negligence of government employees. *Id.* He asserted that allowing suits against governmental entities would not financially cripple those entities because any person bringing suit would still

have to prove all the legal elements of a negligence action. *See id.*

Representative Harding, the bill's sponsor, stated: "We say we're imposing an additional burden possibly on the taxpayer. But why should one individual through no fault of his own be required to bear the burden that society is responsible for? . . . The bill will alleviate many injustices." *See* Harding Statement, *supra.* In response, Representative Evans stated, "I think we've waited long enough in this state to enact this legislation. If it costs a few more bucks that we might have justice, I am one that is willing to afford it." Floor Debate, Statement of Representative Richard V. Evans, 65th Utah Leg., Gen. Sess. (Feb. 11, 1965) (House recording No. 3, side 1). In his closing statement, Representative Harding urged the passage of the bill:

If we believe that a government should be responsible to the people, it should be responsible for all of its acts, and this means the acts of its agents. Now, at the present time, if a person commits a wrongful act in a negligent manner, not an intentional wrong, he is found responsible for his act by the courts, you and I do. But a governmental agency is not, because "the king can do no wrong." It appears to me that we cannot allow this doctrine to remain the laws of this state, that we should assert ourselves and realize the responsibility that government has to be a responsible agency, that its employees and officers must be responsible. I believe that to allow a person to commit a wrong and because of sovereign immunity and to hide behind the ancient doctrine of "a king can do no wrong" is to be but an ostrich and put your head in the sand and maybe it will go away. I think that we must accept [our] obligations.

Harding Statement, *supra.*

The legislative history strongly supports the view that the legislature intended to compensate victims injured by governmental negligence, but not for injuries caused by the intentional torts of government employees. Hence, under the Act, the status of the intentional tortfeasor *does* matter. At no point in the entire legislative record is there any ref-

erence to immunizing the state for its negligence where that negligence, together with an assault or battery committed by any person, causes harm. It makes very little sense, given the purposes of the statute, to say that the state is immune from suit for its negligence because a private individual has fortuitously committed an assault or battery also contributing to the injury. Thus, in this case, although Taylor could have sued the District if he had tripped and fallen into the glass, the fortuity of his having been pushed renders it immune. Neither the legislative history nor the purpose of the Act indicates that the legislature intended such a result.

Our holding in *Ledfors* did not comport with the legislative history or the purpose of the Act. Moreover, the unfairness and injustice of the rule's application have become extremely clear in subsequent cases. *See, e.g., Malcolm v. State,* 878 P.2d 1144, 1146 (Utah 1994); *S.H. v. State,* 865 P.2d 1363, 1364 (Utah 1993); *Petersen v. Board of Educ.,* 855 P.2d 241, 243 (Utah 1993); *Higgins v. Salt Lake County,* 855 P.2d 231, 233–36 (Utah 1993). In *S.H.,* this court held that the state, a school district, and a state school were immune under section 63–30–10(1)(b) where a deaf student was sexually molested and assaulted by a taxicab driver who was under contract with the school to transport handicapped students. 865 P.2d at 1364. The plaintiffs had alleged that the school defendants had negligently employed and instructed the taxicab company. *Id.* In concluding that the state agencies were immune, this court agreed that such a result may be "unconscionable" but held that only the legislature could change the law. *Id.* at 1365.[7] However, in *S.H.* the dissent noted the inanity of such a conclusion:

It is indefensible for a child who is injured by a negligently hired cab driver to be able to recover from the State for an injury caused by the cab driver's negligently colliding with another automobile but not to be able to recover when that contractor assaults the child.

*Id.* at 1366 (Stewart, J., dissenting).

Also relevant to my conclusion that we made a mistake in *Ledfors* is a reexamination of cases decided under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2680(h), 1346(b),[8] in which recovery has been allowed for injuries connected to assaults by nongovernment employees. *See, e.g., Thigpen v. United States,* 800 F.2d 393, 394–95 (4th Cir.1986) (holding exception to waiver of governmental immunity under FTCA for claims that arise out of an assault or battery depends upon existence of assault or battery by government employee); *Panella v. United States,* 216 F.2d 622, 624 (2d Cir.1954) (same). *Ledfors* distinguished the FTCA because that Act immunizes "any claim" arising out of assault or battery, while section 63–30–10(1)(b) of the Utah Governmental Immunity Act provides immunity where "the injury" arises out of an assault or battery. 849 P.2d at 1166 n. 4. I think we were wrong. Section 2680(h) of the FTCA immunizes the government from suit for "any claim arising out of assault, [or] battery." There is no substantive distinction between this language and the language of section 63–30–10(1)(b), which immunizes the government if the "injury arises out of" an assault or battery. Indeed, imagining a situation where a "claim arising out of" an assault or battery would not also include a harm or "injury" arising out of the assault or battery is virtually

---

7. In fact, in 1995 the Utah Senate recognized the injustice of the current interpretation of the Governmental Immunity Act. *See* S. 94, 51st Utah Leg., Gen. Sess. § 2 (1995). Senator Robert F. Montgomery introduced Senate Bill 94, which would have changed section 63–30–10 to read, "Immunity from suit of all governmental agencies is waived ... except if the injury arises out of: ... (3) assault or battery, except that this exception does not apply when: ... (ii) the assault or battery was not committed by an employee of a governmental entity." *Id.* The Senate passed this amendment on February 17, 1995, with eighteen voting for and nine voting against the bill and two senators absent. Utah Senate

Journal, 51st Utah Leg., Gen. Sess., 550–51 (Feb. 17, 1995). The House, however, read the bill for a second time on the last day of the session but never voted on the bill before the end of the session. *See* Utah House Journal, 51st Utah Leg., Gen. Sess., 1022–23 (March 1, 1995).

8. Section 2680(h) provides that the United States may not be subject to suit for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."

impossible. *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 1, at 4 (5th ed.1984) (stating that claim in tort requires that there be injury).

The approach taken by the federal courts under the FTCA is significant because the Utah Governmental Immunity Act is patterned after the FTCA as well as similar acts in California and Michigan. *See* Utah Legislative Counsel, Report of the Governmental Immunity Committee, 68 (Dec.1964). In fact, the Utah Legislature had proposed adoption of the FTCA in 1961, but it was vetoed by the Governor in part because the FTCA did not establish funds or the mechanics for paying for claims and did not accommodate the problems regarding compensation of consequential damages. *See id.* at 64–65. Thus, adoption of the distinction between government and nongovernment employees taken in *Thigpen* and *Panella* would be consistent with legislative intent to model the Act after the FTCA.

Therefore, because the language and legislative history of section 63–30–10(1)(b) suggest that the legislature always intended this section to retain immunity only where an assault or battery is committed by a state employee, I would overrule *Ledfors* and hold that the District is not immune from suit under 63–30–10(1)(b).

STEWART, Associate C.J., concurs in Justice DURHAM's dissenting opinion.