2007 UT App 263

**Charles F. BARENBRUGGE and Belinda Barenbrugge, Plaintiffs and Appellees,**

v.

**STATE of Utah and Department of Transportation, Defendants and Appellants.**

**No. 20060730–CA.**

Court of Appeals of Utah.

Aug. 2, 2007.

Mark L. Shurtleff, Atty. Gen., and J. Clifford Petersen, Asst. Atty. Gen., Salt Lake City, for Appellants.

Stephen P. Horvat and Nathan B. Wilcox, Salt Lake City, for Appellees.

Before GREENWOOD, Associate P.J., BILLINGS, and McHUGH, JJ.

## OPINION

GREENWOOD, Associate Presiding Judge:

¶1 Defendants the State of Utah and the Utah Department of Transportation (collectively, the State), brought this interlocutory appeal from a trial court order denying their motion for summary judgment. We affirm.

## BACKGROUND

¶2 Jenna Barenbrugge (Ms. Barenbrugge), daughter of Plaintiffs Charles and Belinda Barenbrugge (the Barenbrugges), died in an automobile accident on Interstate 215 in August 2004. As Ms. Barenbrugge drove toward the 1300 East overpass, her car hit standing rainwater on the highway, and she collided with a concrete bridge pillar. In the Barenbrugges' complaint, they allege

that Ms. Barenbrugge lost control of the car because of the standing rainwater on the roadway. According to state weather records, eight-tenths of an inch of rain fell between 6:30 p.m. and 6:45 p.m. on the date of the accident. Ms. Barenbrugge's crash occurred at 6:55 p.m.

¶ 3 The State maintains a drainage system on Interstate 215 near the site of the accident that consists of sixteen grated drainage boxes on the shoulder of the highway and eight grated drainage boxes on the median. The shoulder drainage box closest to the accident site is 100 feet away. The closest drainage box on the median is 500 feet from the accident. All of the drainage boxes connect to a single underground pipe that collects runoff water from the boxes.

¶ 4 In response to the Barenbrugges' wrongful death lawsuit, the State sought summary judgment asserting that the State was immune from suit based upon the Governmental Immunity Act of Utah (the Act), section 63–30d–301(5)(n). *See* Utah Code Ann. § 63–30d–301(5)(n) (Supp.2004). The Act allows the State to maintain immunity "if the injury arises out of, in connection with, or results from: ... the construction, repair, or operation of flood or storm systems." *Id.*

¶ 5 The Barenbrugges assert that this provision does not provide the State with immunity because the record contains no evidence regarding the construction, repair, or operation of the storm system, but simply acknowledges that one exists. Furthermore, the Barenbrugges assert that there is no evidence that the operation, construction, or repair of the storm system caused the accident. They argue that this is not a case where a storm system backed up and caused water to pool or overflow onto the highway. Here, the standing water resulted from falling rain, not from a malfunctioning or inadequate storm system. The Barenbrugges allege that the State was negligent in maintaining the freeway in that area, and that the accident resulted from the defec-

tive, unsafe, and dangerous condition of the freeway. *See id.* § 63–30d–301(3)(a)(i).

¶ 6 The trial court denied the State's summary judgment motion and this interlocutory appeal followed.

## ISSUE AND STANDARD OF REVIEW

¶ 7 "A motion for summary judgment should be granted only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law." *Lovendahl v. Jordan Sch. Dist.,* 2002 UT 130, ¶ 13, 63 P.3d 705. A trial court's summary judgment decision and its interpretation of a statute are questions of law that this court reviews for correctness. *See Blackner v. State,* 2002 UT 44, ¶ 8, 48 P.3d 949. Further, "whether an activity can be characterized as ... the construction, repair, and operation of a flood or storm system ... is a question of fact—and in this case a question of material fact." *Pigs Gun Club, Inc. v. Sanpete County,* 2002 UT 17, ¶ 16, 42 P.3d 379. "A trial court is not authorized to weigh facts in deciding a summary judgment motion, but is only to determine whether a dispute of material fact exists." *Id.* at ¶ 24.

## ANALYSIS

¶ 8 Determining whether a governmental entity is immune from suit under the Act, *see* Utah Code Ann. § 63–30d–301 (Supp.2004),[1] requires three inquiries:

First, courts must ascertain whether the activity was a governmental function and thereby entitled to blanket immunity under the Act. Second, if the activity constituted a governmental function, courts must then look to see whether the State has waived immunity under another section of the Act. Finally, courts must determine whether there is an exception to the waiver of immunity that retains immunity against suit for the cause of action in the particular case.

1. Although a prior version of the Act is cited in several cases referenced in this opinion, the analysis in those cases remains relevant under the current version because the specific provision at issue is identical in both the previous and current versions of the Act. *Compare* Utah Code Ann. § 63–30–10 (1997) (repealed 2004) *with id.* § 63–30d–101 (Supp.2004).

*Wagner v. State*, 2005 UT 54, ¶ 12, 122 P.3d 599.

¶ 9 There is no dispute that the State's conduct was a governmental function and that the Act contains a provision waiving immunity for an injury related to a roadway's defective, unsafe, or dangerous condition. *See* Utah Code. Ann. § 63–30d–301(3)(a)(i). The final inquiry in the above test frames the critical issue in this case: whether the State retained immunity under an exception. *See id.* § 63–30d–301(5) (listing circumstances under which the State retains immunity despite subsection three's waiver); *Lovendahl*, 2002 UT 130 at ¶ 15 n. 2, 63 P.3d 705.

¶ 10 The applicable exception states: "Immunity is not waived under Subsection[ ](3) . . . if the injury arises out of, in connection with, or results from: . . . the construction, repair, or operation of flood or storm systems." Utah Code Ann. § 63–30d–301(5)(n). Thus, the determinative issue is whether the standing water that caused Ms. Barenbrugge's car crash arose out of, in connection with, or was the result of, the construction, repair, or operation of a flood or storm system.

¶ 11 The State claims that Ms. Barenbrugge's accident necessarily arose out of the operation of the storm system because "the storm system . . . was undisputedly constructed and maintained to drain storm water from the entire section of road where the accident occurred." The State refers to *Taylor v. Ogden City School District*, 927 P.2d 159 (Utah 1996), in which the supreme court endorsed an expansive definition of the phrase "arises out of":

> [T]he words "arising out of" are very broad, general and comprehensive. They are commonly understood to mean originating from, growing out of, or flowing from, and require only that there be some causal relationship between the injury and the risk [provided for].

*Id.* at 163 (alterations in original) (further quotations and citations omitted). The applicable statute in *Taylor* stated that immunity was retained "if the injury . . . arises out of assault." *Id.* at 162 (omission in original) (quoting Utah Code Ann. § 63–30–10(1)(b) (1989) (repealed 2004)). The *Taylor* court

affirmed that a school district maintained immunity when a student suffered physical injury arising out of an assault by another student. *Id.* at 163–64. Similarly, in *Ledfors v. Emery County School District*, 849 P.2d 1162 (Utah 1993), the supreme court held that even if the state was negligent in failing to protect a student from battery, the immunity exception applied because the student's injury arose out of a battery and the statute contained an exception to the waiver of immunity for battery. *See id.* at 1165–67.

¶ 12 While the Utah Supreme Court upheld governmental immunity in both *Taylor* and *Ledfors*, the statutory grant of immunity directly applied to the undisputed facts. In both cases, the students were injured on school grounds by other students who inflicted an assault or battery upon them, and the applicable statutes specifically retained governmental immunity for assault and battery. *See Taylor*, 927 P.2d at 163; *Ledfors*, 849 P.2d at 1163, 1165. In this case, however, it is not equally clear that Ms. Barenbrugge's injuries arose out of the operation of the storm system.

¶ 13 The State also cites *Blackner v. State*, 2002 UT 44, 48 P.3d 949, where the Utah Supreme Court, in upholding the grant of summary judgment in favor of the state, stated that the "arises out of . . . in connection with, or results from" language "requires only that there be *some* causal nexus between the risk and the resulting injury." *Id.* at ¶¶ 13, 15. There, the plaintiff was injured in an avalanche while he was stopped and waiting for the remnants of an earlier avalanche to be cleared from the roadway. *See id.* at ¶¶ 2–7. The plaintiff alleged that the State's negligence in managing the first avalanche resulted in his injuries. *See id.* at ¶ 7. In finding that the "natural condition" exception provided in Utah Code section 63–30–10(11) applied, the supreme court said that "*but for* the snow pack and the first avalanche, [the plaintiff] would not have suffered injury." *Id.* at ¶¶ 13–16; *see also* Utah Code Ann. § 63–30–10(11)(13) (1997) (repealed 2004). The court reasoned that the snow pack and resulting first avalanche were "natural conditions" that resulted in the

stopped traffic, subsequent avalanche, and plaintiff's injuries. *Id.* at ¶¶ 14–16.

¶ 14 In contrast, the Barenbrugges rely on the reasoning in *Pigs Gun Club v. Sanpete County*, 2002 UT 17, 42 P.3d 379, to support their argument that immunity does not apply. In that case, the plaintiff's property was flooded when a county-built road crossing the Sevier River prevented excess water from flowing to a reservoir. *See id.* at ¶¶ 2–3. The trial court dismissed the plaintiff's claim on summary judgment, holding that the county, in raising the level of the road and taking other actions, was involved in the management of flood waters and the construction, repair, and operation of a flood or storm system and was thus immune from suit. *See id.* at ¶ 15. The supreme court reversed because there were disputes of material fact concerning whether the county· was acting in a capacity that retained statutory immunity. *See id.* at ¶ 24. The supreme court reasoned that "[b]ased on the evidence presented by plaintiffs, we cannot affirm the trial court's conclusion that no disputes of material fact exist." *Id.* Similarly, there are disputed material facts in this case.

¶ 15 Given the evidence presented thus far, the State has not established that the accident arose from the construction, repair, or operation of a flood or storm system. The State has not demonstrated a causal connection between Ms. Barenbrugge's accident and the storm system. Important material facts include whether the storm system was located close enough to the accident site to be implicated, was properly functioning or

failed, became overwhelmed with the amount of water, or otherwise could have been or was designed to prevent standing water from accumulating on the freeway. Moreover, nothing in the record speaks to the question of whether a storm system that is 100 feet from the accident site is close enough to affect the presence of standing water.

¶ 16 In summary, to sustain its burden on summary judgment, the State was required to show that undisputed material facts demonstrated that the accumulation of water leading to Ms. Barenbrugge's accident arose from the construction, repair, or operation of a storm drainage system. We agree with the trial court that the State has not met its burden.[2]

## CONCLUSION

¶ 17 While the statutory language "arises out of, in connection with, or results from" requires only that there be *some* causal nexus between the risk and the resulting injury, the State has not established that causal nexus. Because material facts remain in dispute, we conclude that the trial court did not err in refusing to grant the State's summary judgment motion. Accordingly, we affirm.

¶ 18 WE CONCUR: JUDITH M. BILLINGS and CAROLYN B. McHUGH, Judges.

---

**2.** We do not address the Barenbrugges' statutory argument regarding the absence of the word "failure" in the controlling legislation because we affirm on the specific grounds stated in this opinion. Moreover, the statutory argument was not before the trial court at the time it granted summary judgment.