2008 UT App 226

**CLEARFIELD CITY, Plaintiff and Appellee,**

v.

**Ryan William HOYER, Defendant and Appellant.**

**No. 20070433–CA.**

Court of Appeals of Utah.

June 12, 2008.

Stephen D. Spencer, Murray, for Appellant.

Mark L. Shurtleff, atty. gen., Joanne C. Slotnik, Martin B. Bushman, and John P. Soltis, asst. attys. gen., Salt Lake City, for Appellee.

Before THORNE, Associate P.J., BILLINGS and DAVIS, JJ.

## OPINION

THORNE, Associate Presiding Judge:

¶1 Ryan William Hoyer appeals from his conviction of illegally taking protected wildlife in violation of Utah Code section 23–20–3, *see* Utah Code Ann. § 23–20–3 (2007). We affirm Hoyer's conviction.

## BACKGROUND

¶2 Hoyer is an amateur herpetologist specializing in the study of the species of snake commonly known as the rubber boa. On January 9, 2004, Division of Wildlife Resources (DWR) executed a search warrant at Hoyer's home as part of "Operation Slither." Operation Slither was an investigation intended to target individuals who were involved in the illegal possession and trade of reptiles. During the search, DWR seized a computer, documents, and about sixty-five rubber boa snakes.

¶3 On September 15, 2004, Hoyer was charged in the Davis County Justice Court with illegally taking, transporting, selling, or purchasing protected wildlife in violation of Utah Code section 23–20–3. On March 24, 2005, the Davis County Attorney moved to dismiss the information because of jurisdictional concerns. The motion was granted and the case was dismissed.

¶ 4 On November 18, 2005, charges were refiled against Hoyer in the Clearfield City Justice Court. Hoyer filed a pretrial motion arguing that the statute under which he was charged should be deemed void for vagueness. The justice court judge reserved ruling on the motion until trial, and eventually denied the motion. On October 17, 2006, Hoyer was convicted of violating Utah Code section 23–20–3 by unlawfully possessing approximately thirty-eight rubber boa snakes imported into Utah without a valid certificate of veterinary inspection or entry permit, both of which are required by Utah Administrative Code rule R657–53–21(2). Hoyer was acquitted of other charges of unlawfully possessing snakes illegally collected in California and unlawfully propagating snakes in captivity.

¶ 5 Hoyer appealed his justice court conviction to the district court and, after trial de novo, was again convicted of importing approximately thirty-eight rubber boa snakes without a veterinary inspection or certificate of registration. On the day of trial, the district court denied Hoyer's motion in limine challenging the constitutionality of Utah Code section 23–20–3 and related regulations, and held that the statute was not unconstitutionally vague. Hoyer appeals the district court's ruling upholding the constitutionality of section 23–20–3.

## ISSUE AND STANDARD OF REVIEW

¶ 6 Hoyer's sole argument on appeal is that Utah Code section 23–20–3, as it incorporates various administrative rules under the circumstances of this case, is void for vagueness. A constitutional challenge to a statute presents a question of law that we review for correctness. *See State v. Tenorio,* 2007 UT App 92, ¶ 5, 156 P.3d 854. "When addressing a constitutional challenge to a statute, we presume that the statute is valid and resolve any reasonable doubts in favor of constitutionality." *State v. Willis,* 2004 UT 93, ¶ 4, 100 P.3d 1218.

## ANALYSIS

¶ 7 Hoyer's appeal challenges the constitutionality of Utah Code section 23–20–3 as it was applied in this case to enforce Utah's importation requirements for reptiles. Hoyer argues that language contained in the Utah Administrative Code pertaining to importation requirements is so confusing that it renders his conviction void under the doctrine of vagueness. We disagree and affirm Hoyer's conviction.

¶ 8 " 'As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.' " *State v. Green,* 2004 UT 76, ¶ 43, 99 P.3d 820 (quoting *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)). In challenging a statute for vagueness, "it is not enough for the defendant to merely 'inject doubt as to the meaning of words where no doubt would be felt by the normal reader.' " *State v. Ansari,* 2004 UT App 326, ¶ 45 n. 6, 100 P.3d 231 (quoting *State v. MacGuire,* 2004 UT 4, ¶ 18, 84 P.3d 1171). Rather, we will uphold the challenged enactment so long as " 'it is clear what the ordinance as a whole prohibits.' " *Id.* (quoting *Grayned v. City of Rockford,* 408 U.S. 104, 110, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)).

¶ 9 Here, Hoyer was charged with unlawful possession of wildlife. The amended information alleged that Hoyer had, in violation of Utah Code section 23–20–3, "unlawfully possessed approximately 38 rubber boa snakes imported to Utah without a valid certificate of veterinary inspection and entry permit issued by the Utah Department of Agriculture and Food as required in Utah Admin. Code [s]ection R657–53–21(2)." Utah Code section 23–20–3 states:

(1) Except as provided in this title or a rule, proclamation, or order of the Wildlife Board, a person may not:

(a) take or permit his dog to take:

(i) protected wildlife or their parts;

(ii) an occupied nest of protected wildlife; or

(iii) an egg of protected wildlife;

(b) transport, ship, or cause to be shipped protected wildlife or their parts;

(c) sell or purchase protected wildlife or their parts; or

(d) possess protected wildlife or their parts unaccompanied by a valid license, permit, tag, certificate of registration, bill of sale, or invoice.

Utah Code Ann. § 23–20–3(1). Utah Administrative Code rule R657–53–21(2) further states that, "[a]s provided in Rule R58–1, the Department of Agriculture and Food requires a valid certificate of veterinary inspection and an entry permit number before *any amphibian or reptile* may be imported into Utah." Utah Admin. Code R657–53–21(2) (emphasis added).

¶ 10 We ascertain no vagueness in the statute or rule as they have been applied to Hoyer's conduct. Rule R657–53–21(2) is very clear that both a certificate of veterinary inspection and an entry permit are required before a person may lawfully import "any amphibian or reptile" into the state of Utah. *See id.* The district court found that Hoyer had imported reptiles into the state without obtaining the required inspection and permit number-the very action that the rule prohibits. As such, we cannot say that the rule, or the statute enforcing it, "fails to provide a 'person of ordinary intelligence a reasonable opportunity to know what is prohibited.'" *See State v. Germonto,* 2003 UT App 217, ¶ 11, 73 P.3d 978 (quoting *Grayned,* 408 U.S. at 108, 92 S.Ct. 2294).

¶ 11 Hoyer's argument to the contrary focuses entirely on the language of rule R58–1–4, which is specifically referenced in rule R657–53–21(2). *See* Utah Admin. Code R657–53–21(2) ("As provided in Rule R58–1 . . . ."). Rule R58–1–4, entitled "Interstate Importation Standards," states:

A. No animal, poultry or bird of any species or other animal including wildlife, that is known to be affected with or has been exposed to a contagious, infectious or communicable disease, or that originates from a quarantine area, shall be shipped, transported or moved into the State of Utah until written permission for such entry is first obtained from Veterinary Services Division, United States Department of Agriculture, Animal and Plant Health Inspection Service, and Utah Department of Agriculture and Food, State Veterinarian or Commissioner of Agriculture and Food.

B. Certificate of Veterinary Inspection. An official Certificate of Veterinary Inspection issued by an accredited veterinarian is required for importation of all animals and poultry. A copy of the certificate shall be immediately forwarded to the Utah Department of Agriculture and Food by the issuing veterinarian or the livestock sanitary official of the state of origin.

C. Import Permits. Livestock, poultry and other animal import permits may be issued by telephone to the consignor, a consignee or to an accredited veterinarian responsible for issuing a Certificate of Veterinary Inspection, and may be obtained from the Utah Department of Agriculture and Food . . . .

*Id.* R58–1–4.

¶ 12 Hoyer argues that rule R58–1–4(B), which requires veterinary inspections for "all animals and poultry" imported into the state, does not give fair notice that it also applies to reptiles. *See id.* R58–1–4(B). While Hoyer acknowledges that reptiles are animals, he argues that the definition of "animals" for purposes of subsection B is implicitly limited by the language of subsection A. Subsection A requires written permission to import an "animal, poultry or bird of any species or other animal including wildlife." *See id.* R58–1–4(A). Hoyer argues that by distinguishing "other animal[s] including wildlife" from animals generally, *see id.,* subsection A removes reptilian wildlife from the general category of animals throughout the remainder of the rule.[1] *See generally Nephi City v. Hansen,* 779 P.2d 673, 675 ("[W]here general terms follow specific ones, the rules of con-

---

1. Hoyer does not expressly argue that the language of subsection A similarly limits subsection C, which governs import permits for "[l]ivestock, poultry, and other animal[s]." *See* Utah Admin. Code R58–1–4(C). Nevertheless, we consider the potential impact of Hoyer's argument on subsec-

tion C as a part of our consideration of the statutory scheme as a whole. We note that Hoyer's conviction also rested on his failure to obtain import permits, and thus he would be unable to obtain relief unless his argument was to also invalidate subsection C.

struction, ... require that the general terms be given a meaning that is restricted to a sense analogous to the preceding specific terms.").

¶ 13 We disagree with Hoyer's argument for several reasons. First, rule R657 is quite clear that the state "*requires* a valid certificate of veterinary inspection and an entry permit number before *any* amphibian or reptile may be imported into Utah." Utah Admin. Code R657–53–21(2) (emphasis added). Although this broad requirement is modified by the introductory clause "[a]s provided in Rule R58–1," Hoyer's interpretation of rule R58–1–4 would limit the requirement of a veterinary inspection to only those reptiles known to be exposed to disease or originating in a quarantined area. Taken to its logical extreme, the same argument would exempt reptiles from the separate entry permit requirement altogether. We are not inclined to so drastically limit the otherwise clear intent of rule R657–53–21 in the absence of equally clear direction to the contrary in rule R58–1–4.

¶ 14 Nor do we find such clear direction to the contrary in rule R58–1–4, despite Hoyer's statutory interpretation argument. The language upon which Hoyer relies does not purport to be a definition affecting the entire rule, but merely lists the categories of creatures governed by subsection A. We see no reason that the expansive language of subsection A should be deemed to limit the equally expansive language of subsections B and C: "*all animals* and poultry" and "[l]ivestock, poultry and *other animal[s]*." *Id.* R58–1–4(B), -(C) (emphasis added). Reptiles are clearly a type of animal and, as such, are included within any reasonable reading of the rule.

¶ 15 An ordinary person, reading the provisions of Utah law addressed herein, would understand that persons importing reptiles or any other animals into the state must obtain a veterinary inspection and entry permit in order to comply with the law. Accordingly, the statute and rules forming the basis of Hoyer's conviction are not void for vagueness, and we affirm that conviction.

## CONCLUSION

¶ 16 Hoyer has failed to demonstrate that Utah Code section 23–20–3 and relevant provisions of the Utah Administrative Code present a problem of unconstitutional vagueness. The challenged provisions give clear notice that reptiles may not be imported into Utah without a veterinary inspection and entry permit, the very activity for which Hoyer was convicted. Accordingly, we affirm Hoyer's conviction.

¶ 17 WE CONCUR: JUDITH M. BILLINGS, Judge and JAMES Z. DAVIS, Judge.