2009 UT 38

**Ryan HOYER and Richard F. Hoyer, Plaintiffs and Appellants,**

v.

**STATE of Utah, Division of Wildlife Resource; Jim Karpowitz; Richard Ashcroft; Rudy Musclow; and Miles Moretti (in their official capacity as officials of the Utah Division of Wildlife Resources), Defendants and Appellee.**

No. 20080103.

Supreme Court of Utah.

June 19, 2009.

Stephen D. Spencer, Nathan Whittaker, Murray, for appellants.

Mark L. Shurtleff, Att'y Gen., Bridget K. Romano, Asst. Att'y Gen., Salt Lake City, for appellee.

NEHRING, Justice:

## INTRODUCTION

¶ 1 Ryan Hoyer and his father, Richard Hoyer, sued Utah Division of Wildlife Resources for negligence. DWR seized approximately sixty-five rubber boa snakes from Ryan Hoyer's home. After the snakes were seized, Ryan discovered that all but eight of the snakes died while in the "care" of DWR. Through their lawsuit, the Hoyers sought to recover damages for the death of the snakes. DWR moved for summary judgment, which the district court granted, and the Hoyers brought the appeal that we decide today.

## BACKGROUND

¶ 2 Ryan Hoyer is an amateur herpetologist whose research focuses on the rubber boa (*charina bottae* ). He assists his father, Richard, who has studied the rubber boa for over forty years. On January 9, 2004, DWR obtained a warrant to search Ryan's home as part of "Operation Slither," an investigation aimed at prosecuting the illegal possession of and commercial trade in reptiles. Upon searching Ryan's home, DWR seized a computer, documents, and approximately sixty-five rubber boa snakes. The snakes were taken to DWR offices in Salt Lake City and

were held as evidence in criminal proceedings against Ryan in the Davis County and Clearfield City Justice Courts. Ryan was first convicted in the Clearfield Justice Court. He then exercised his right to a trial de novo in the Second District Court and was again convicted of the unlawful possession of some of the snakes. Ryan appealed and the Utah Court of Appeals affirmed his conviction. *Clearfield City v. Hoyer*, 2008 UT App 226, ¶ 7, 189 P.3d 94 (affirming Ryan Hoyer's conviction and rejecting his challenge to the constitutionality of Utah Code section 23–20–3 and administrative rule 58–1–4(B)).

¶ 3 After DWR seized the snakes, Ryan offered to have his father, Richard, travel to Utah to care for the snakes or to arrange for expert care by a third party. DWR declined these offers. On October 16, 2006, the date of Ryan's district court conviction and more than two and one-half years after DWR seized the snakes, Ryan was granted the opportunity to inspect the snakes at DWR offices pursuant to an order from the Clearfield City Justice Court. At that time, he learned that all but eight of the snakes had died.

¶ 4 Upon learning of the death of the snakes, Ryan and his father sued DWR, alleging negligence by DWR in caring for the snakes, as well as violations of substantive and procedural due process. On September 11, 2007, DWR filed a motion for summary judgment. It argued that since the snakes were seized pursuant to a judicial proceeding, DWR retained immunity under Utah Code section 63–30d–301(5)(e) (2004) [1]. The trial court granted the motion on December 13, 2007. On January 3, 2008, the Hoyers filed a petition for permission to appeal an interlocutory order. DWR opposed the motion, arguing that the grant of summary judgment was not an interlocutory order but a final order. On January 17, the Hoyers filed a motion in the district court seeking an extension of time to file a notice of appeal. The Hoyers withdrew the petition for permission to appeal an interlocutory order on January 24, and on January 25, they filed a notice of appeal with the clerk of the district court. The district court granted the motion and extended the Hoyers' deadline for filing a notice of appeal to February 14. The Hoyers did not refile or amend their previous notice of appeal.

¶ 5 DWR moved for the summary dismissal of the Hoyers' appeal with this court. DWR argues that since the Hoyers filed their notice of appeal more than thirty days after the entry of final judgment (December 13, 2007) and before the district court granted their motion to extend the time to file, the appeal failed to comply with Utah Rule of Appellate Procedure 4(a) and (e) and, as a result, this court lacks subject matter jurisdiction to consider the appeal. In response, the Hoyers assert that while Utah Rule of Appellate Procedure 4(e) states that "[n]o extension shall exceed 30 days past the prescribed time," nothing in the rule prevents us from hearing an appeal when the notice of appeal was filed after the original deadline but before a properly filed application to extend the time to appeal under rule 4(e) was granted.

¶ 6 DWR also filed a motion to strike portions of the fact section of the Hoyers' appellate brief. DWR contends that because the Hoyers failed to support their factual assertions on pages six and seven of their brief with citations to the record, we should strike those portions pursuant to Utah Rule of Appellate Procedure 24(k). In response to DWR's motion to strike, the Hoyers filed a motion for leave to amend their brief along with proposed amendments.

### STANDARD OF REVIEW

¶ 7 "Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Crestwood Cove Apartments Bus. Trust v. Turner*, 2007 UT 48, ¶ 10, 164 P.3d 1247 (internal quotation marks omitted). When reviewing a grant of summary judgment, we review the district court's conclusions of law for correctness and give them no deference. *Grappendorf v. Pleasant Grove City*, 2007

---

1. In 2008, the legislature renumbered Title 63 of the Utah Code; because substantive changes were made, we cite to the version in effect at the time the Hoyers commenced their suit.

UT 84, ¶ 5, 173 P.3d 166; *Blackner v. State,* 2002 UT 44, ¶ 8, 48 P.3d 949. We review the facts in the light most favorable to the non-moving party, the Hoyers, and make any reasonable inferences in their favor. *Johnson v. Hermes Assocs.,* 2005 UT 82, ¶ 2, 128 P.3d 1151.

## ANALYSIS

¶ 8 This appeal presents us with three issues: (1) whether the Hoyers' appeal was timely; (2) whether we should strike portions of their brief for not properly citing to the record; and (3) whether DWR is immune from suit because its actions fall within the exception to the waiver of immunity for negligence contained in section 63–30d–301.

## I. THE HOYERS' APPEAL WAS TIMELY

¶ 9 The first issue before us is whether the Hoyers' appeal was timely. DWR argues that we lack subject matter jurisdiction because the Hoyers filed their appeal more than thirty days after the entry of final judgment (December 13, 2007) and before the district court granted the motion to extend the time to file and because they did not renew their notice of appeal after the extension was granted. This appeal, DWR insists, fails to comply with Utah Rule of Appellate Procedure 4(a) and (e). In response, the Hoyers argue that the appeal is timely because nothing in the language of the rule prevents this court from asserting jurisdiction over an appeal filed after the time required by rule 4(a) but before the entry of an order extending the time to appeal under 4(e).

¶ 10 In analyzing this issue, we first turn to Utah Rule of Appellate Procedure 4(a), which states,

> In a case in which an appeal is permitted as a matter of right from the trial court to the appellate court, the notice of appeal ... shall be filed with the clerk of the trial court within 30 days after the date of entry of the judgment or order appealed from.

Utah Rule of Appellate Procedure 4(e) states,

The trial court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by paragraphs (a) and (b) of this rule. A motion filed before expiration of the prescribed time may be ex parte unless the trial court otherwise requires. Notice of a motion filed after expiration of the prescribed time shall be given to the other parties in accordance with the rules of practice of the trial court. No extension shall exceed 30 days past the prescribed time or 10 days from the date of entry of the order granting the motion, whichever occurs later.

¶ 11 Finally, Utah Rule of Civil Procedure 1(a) states that the rules "shall be liberally construed to secure the just ... determination of every action."

¶ 12 Taken together, these rules authorize the district court to grant an extension of the deadline for filing a notice of appeal within the thirty days following the expiration of the time for filing provided by rule 4(a) and forbid extensions of more than thirty days from the date of entry of a judgment unless the new deadline is within ten days of the granting of the extension. Here, it is uncontested that the district court granted the motion to extend the time to file a notice of appeal within the thirty-day period after the rule 4(a) deadline passed. The question we are faced with is whether the Hoyers' notice of appeal, which was filed after they moved for an extension of the deadline but before the extension was granted, fulfilled their filing requirement.

¶ 13 The timing of the notice of appeal in this case is similar to the situation in *Nelson v. Stoker,* 669 P.2d 390, 392–93 (Utah 1983), where a premature notice of appeal was filed and the final judgment merely formally entered the earlier announced decision that the plaintiffs appealed from. In *Stoker,* the defendants filed a notice of appeal following a minute entry granting the plaintiffs' motion for summary judgment. Approximately one month later, the district court entered its written Findings of Fact, Conclusions of Law and Judgment, and the defendants did not

file another notice of appeal. We held that such a premature notice of appeal did not automatically deprive this court of jurisdiction. *Id.* at 392.

¶ 14 In *Stoker*, we reaffirmed our holding in *Wood v. Turner*, 18 Utah 2d 229, 419 P.2d 634, 635 (1966), where we stated,

> Our Constitution assures the right of appeal in all cases to the end that claimed errors or abuses may be reviewed by another tribunal. It is usually held that statutes implementing the right of appeal are liberally construed and applied in the furtherance of justice; and that an interpretation which will prevent that right from being exercised is not favored. The purpose of a notice of appeal is to advise the opposite party that the appeal has been taken and of the essentials requisite thereto. If it does so in substance, it should be given effect and mere technical defects should not defeat the right of appeal. This is in accord with the generally desirable objective of not placing undue stress on technicalities where others are not adversely affected.

*Wood,* 419 P.2d at 635 (citations omitted).

¶ 15 Although the Hoyers sought to extend the time to appeal an order that was indisputably final, the invocation of this court's jurisdiction over the appeal was proper. The reasoning that informed our holdings in *Stoker* and *Wood* strongly influence the result here. The Hoyers' notice of appeal advised DWR that they were appealing and left no doubt about the order from which the appeal was sought. Moreover, DWR would sustain no prejudice because the sole purpose of granting the motion to extend the time for filing the notice of appeal was to legitimize the notice of appeal that the Hoyers filed after the deadline set by rule 4(a) but within the extended time granted by the trial court. Requiring the Hoyers to file a second notice of appeal after the motion to extend was granted would put "undue stress on technicalities where others are not adversely affected." *Wood,* 419 P.2d at 635.

¶ 16 Interpretation of the federal equivalent to rule 4(e) also persuades us that the district court's extension of the notice of appeal deadline operates to validate the Hoy-

ers' untimely notice of appeal. In *Hinton v. City of Elwood,* 997 F.2d 774, 777 (10th Cir. 1993), the plaintiff filed his notice of appeal one day after the filing deadline. Mr. Hinton filed a motion for extension of time within the period allowed by the federal rule, and the district court granted him an extension. *Id.* He did not file another notice of appeal after receiving the extension. *Id.* at 777–78. The court held that "Rule 4(a)(5) permits the district court's approval of a timely motion to extend to validate a prior notice of appeal" and that "to require the filing of a new notice of appeal following a motion to extend would amount to little more than 'empty paper shuffling.'" *Id.* at 778. The court noted that "the Federal Rules of Appellate Procedure were [not] designed to impose such a hollow ritual on a would-be appellant." *Id.*

¶ 17 We decline to endorse DWR's contention that the Hoyers were required to file a second notice of appeal after the district court granted their motion for extension of time to file the notice of appeal. Because requiring a second notice of appeal would "amount to little more than empty paper shuffling" and finding that the Hoyers' notice of appeal was timely would not prejudice DWR, we conclude that the Hoyers' appeal was timely filed pursuant to the district court's grant of the motion to extend the time for filing.

## II. THE HOYERS' AMENDMENT OF THEIR BRIEF IS ADEQUATE

¶ 18 We next turn to the issue of whether we should strike portions of the Hoyers' brief for failure to cite to the record. Because this court's review is limited to the evidence contained in the record on appeal, DWR insists that we should strike the factual assertions that the Hoyers presented which lacked citations.

¶ 19 The Hoyers argue that there is no need to strike the factual assertions from their brief because all the facts are present in the record. Since they filed their proposed amendments with their motion for leave to amend, they have not imposed on this court the burden of determining whether the facts are in the record. Granting DWR's

motion to strike in this case, the Hoyers argue, would not serve to advance the administration of justice and would be fundamentally unfair. We agree.

¶ 20 We decline to grant DWR's motion to strike portions of the Hoyers' brief for not properly citing to the record. It is true that Utah Rule of Appellate Procedure 24(e) requires that "[r]eferences shall be made to the pages of the original record as paginated" and that rule 24(k) provides that "[b]riefs which are not in compliance may be disregarded or stricken, on motion or sua sponte by the court." However, permitting the Hoyers to amend would not result in prejudice to the court or DWR.

¶ 21 Accompanying the Hoyers' motion to amend are proposed amendments, which consist entirely of the omitted citations to the record about which DWR complains. These proposed amendments do not saddle the court or DWR with "the expense and time of performing the critical task of marshaling the evidence." *United Park City Mines Co. v. Stichting Mayflower Mountain Fonds,* 2006 UT 35, ¶ 26, 140 P.3d 1200. Nor do they introduce "evidence not made part of the record on appeal." *Lovendahl v. Jordan Sch. Dist.,* 2002 UT 130, ¶ 51, 63 P.3d 705. In light of these considerations, we determine that the Hoyers' error is not so prejudicial to the administration of justice that it merits striking sections of their brief. Since the Hoyers moved to amend and submitted proposed changes along with the motion, we grant their motion to amend and deny DWR's motion to strike.

III. AN EXCEPTION TO THE WAIVER OF IMMUNITY FOR NEGLIGENCE APPLIES TO THIS CASE UNDER UTAH CODE SECTION 63–30d–301(5)(e)

¶ 22 The predominant issue in this case is whether DWR is immune from liability for the death of the snakes under Utah Code section 63–30d–301(5)(e). When interpreting a statute, we seek to give effect to the purpose and intent of the legislature. *Grappendorf v. Pleasant Grove City,* 2007 UT 84, ¶ 9, 173 P.3d 166. To that end, we begin by examining the statute's plain language. *Blackner v. State,* 2002 UT 44, ¶ 12, 48 P.3d 949. In conducting a textual analysis, we consider the literal meaning of each term and "'avoid interpretations that will render portions of a statute superfluous or inoperative.'" *Grappendorf,* 2007 UT 84, ¶ 9, 173 P.3d 166 (quoting *Hall v. State Dep't of Corr.,* 2001 UT 34, ¶ 15, 24 P.3d 958). Whenever possible, we interpret the plain language to give effect to all the statutory terms. *Lyon v. Burton,* 2000 UT 19, ¶ 17, 5 P.3d 616.

¶ 23 According to the statute, a governmental entity is immune from liability if it can show the following: (1) the activity giving rise to liability served a government function; (2) governmental immunity is not waived for the activity; or (3) if immunity is waived, then the activity falls within an exception to the waiver. Utah Code Ann. § 63–30d–301 (2004); *see also Grappendorf,* 2007 UT 84, ¶ 6, 173 P.3d 166; *Blackner,* 2002 UT 44, ¶ 10, 48 P.3d 949.

¶ 24 Both parties agree that the first two parts of the test are satisfied. The only issue before us is whether there is an exception to the waiver of immunity for negligence. The exception on which DWR relies provides that the government retains immunity, its negligence notwithstanding, "if the injury arises out of, in connection with, or results from: ... (e) the institution or prosecution of any judicial or administrative proceeding, even if malicious or without probable cause." Utah Code Ann. § 63–30d–301(5)(e). DWR argues that it is immune from liability because the death of the snakes "[arose] out of, in connection with, or result[ed] from ... the institution or prosecution of any judicial or administrative proceeding." *Id.* We agree.

¶ 25 As we have previously held, the term "arising out of" as it is used in the Governmental Immunity Act reaches further than "caused by." *Taylor v. Ogden City Sch. Dist.,* 927 P.2d 159, 163 (Utah 1996). The term is "very broad, general and comprehensive" and is "commonly understood to mean originating from, growing out of, or flowing from." *Id.* (internal quotation marks omitted); *see also Barenbrugge v. State,* 2007 UT App 263, ¶ 11, 167 P.3d 549, *cert. denied,* 186

P.3d 347 (Utah 2007). To arise out of requires only that "there be some causal relationship between the injury and the risk." *Taylor*, 927 P.2d at 163 (internal quotation marks omitted). We have found an exception to the waiver of immunity for negligence when "but for" the act covered by the exception, the harm would not have occurred. *Id.* at 163 (holding that the school was immune for injuries arising out of an assault when, "[b]ut for the assault, [the child's] injuries would not have occurred"). Against this background, our inquiry focuses on whether but for the search warrant and criminal proceedings against the Hoyers the death of the snakes would not have occurred.

¶ 26 The Hoyers ask us to abandon the test we laid out in *Taylor* and adopt a narrower definition for "arising out of" as it is used in section 63–30d–301(5)(e). For us to abandon the *Taylor* standard, the Hoyers have to meet the "substantial burden of persuasion" required for us to overturn our prior precedent and disregard "the doctrine of stare decisis." *State v. Menzies*, 889 P.2d 393, 399 (Utah 1994). They must convince us that the *Taylor* standard was "clearly erroneous or conditions have changed so as to render the prior decision inapplicable." *Id.* at 399 n. 3 (internal quotation marks omitted).

¶ 27 The Hoyers argue that *Taylor* was incorrect because the legislature did not intend that the Governmental Immunity Act incorporate a "but-for" test in determining whether government actions come within the exception to the waiver of immunity for negligence. First, they argue that the "but-for" test renders the waiver of immunity meaningless because the test will encompass every government action. For example, they point out that any government agency that traces its authority to enabling legislation or that is financed by tax dollars could retain immunity for any negligent action, since immunity is not waived for "discretionary function[s]," Utah Code Ann. § 63–30d–301(5)(a), and "the collection of and assessment of taxes," *id.* § 63–30d–301(5)(h). But for the collection of taxes and the enabling legislation, they argue, the government entity would not have the power to act and therefore the exception

to the waiver of immunity for negligence applies. Second, they assert that the legislature would not have waived immunity for negligence for damage to property seized in forfeiture under section 63–30d–301(2)(c) while retaining immunity for damage to property seized as evidence under section 63–30d–301(5)(e).

¶ 28 Finally, the Hoyers argue that the *Taylor* standard is impractical because it would allow the government to retain immunity even if law enforcement officers intentionally damage property seized pursuant to a search warrant. To avoid this disastrous result, the Hoyers urge us to narrowly construe "arising out of" in the Governmental Immunity Act, as we have done in other contexts. *See, e.g.*, *Viking Ins. Co. v. Coleman*, 927 P.2d 661, 664 (Utah Ct.App.1996) (holding that the term "arising out of" in the insurance policy requires "more than 'but-for' causation, but less than legal, proximate cause"); *Commercial Carriers v. Indus. Comm'n of Utah*, 888 P.2d 707, 712 (Utah Ct.App.1994) (holding that an injury from fighting "arises out of" employment if the fighting is "closely entangled" with the employment). The Hoyers argue that the test for an exception to the waiver of immunity should likewise require something less than proximate cause and more than "but-for" causation because the "but-for" test could provide immunity to the government for all negligent acts.

¶ 29 The Hoyers' arguments, however, do not convince us that we were "clearly erroneous" in adopting the *Taylor* standard or that "conditions have changed so much as to render [*Taylor* ] inapplicable." *Menzies*, 889 P.2d at 399 n. 3. In response to the Hoyers' first contention, our case law shows that their fear—that the government will be immune from all acts of negligence—is unfounded. We have never held that the "but-for" test allows the government to retain immunity under all circumstances. *See, e.g.*, *Grappendorf*, 2007 UT 84, ¶ 15, 173 P.3d 166 (holding that atmospheric conditions do not come within the exception for natural conditions on the land); *Johnson v. Utah Dep't of Transp.*, 2006 UT 15, ¶ 39, 133 P.3d 402 (holding that the use of orange barrels on the

highway did not qualify as a discretionary exception to the waiver of governmental immunity); *Laney v. Fairview City*, 2002 UT 79, ¶ 1, 57 P.3d 1007 (holding that the city could not escape liability under the Governmental Immunity Act for negligently operating a power system because the definition of "governmental function" as applied to municipal power systems violated the Utah Constitution).

¶ 30 The Hoyers likewise fail to convince us to abandon the *Taylor* standard by arguing that the legislature would not have waived immunity for negligent damage to property seized in forfeiture but retained it for property seized under a search warrant. Since the legislature enacted section 63–30d–301(2)(c) to deal with negligent damage to property seized in forfeiture and section 63–30d–301(5)(e) to deal with negligent damage arising out of a judicial proceeding, it is clear to us that the legislature has in fact waived immunity in one instance and not the other. It is the plain language of the statute, not the pursuit of symmetry, that controls our decision.

¶ 31 Finally, the *Taylor* standard would not allow the government to retain immunity even if law enforcement officers intentionally damaged property seized pursuant to a search warrant. The Governmental Immunity Act already provides that an action may be brought against individuals in certain cases where intentional damage is caused. Although "[a] plaintiff may not bring or pursue any civil action or proceeding based upon the same subject matter [that was found to be an immune action] against the employee or the estate of the employee whose act or omission gave rise to the claim," a plaintiff may do so if "the employee acted or failed to act through fraud or willful misconduct." Utah Code Ann. § 63–30d–202(3)(c)(i). This convinces us that the Hoyers' second concern—that government employees may willfully destroy property and escape liability—is unfounded.

¶ 32 Looking to the language of the statute, it is apparent that the legislature has manifested a clear intent to retain immunity for actions carried out in connection with criminal prosecutions, and it falls to us to give effect to the legislature's purpose. *Grappendorf*, 2007 UT 84, ¶ 9, 173 P.3d 166. As we have previously held, the test for whether an exception to the waiver of immunity for negligence applies is whether "but for" the excepted act, the harm would not have occurred. *Taylor*, 927 P.2d at 163. Applying the *Taylor* standard to the case before us, we find there is a sufficient causal nexus between the death of the snakes and the prosecution of the judicial proceeding against Ryan Hoyer for the exception to the waiver of immunity for negligence to apply. The uncontested facts show that DWR seized the snakes from Ryan's house pursuant to a search warrant, and DWR kept the snakes and used photographs of them in the criminal proceeding. Both the search warrant and the criminal proceeding were judicial proceedings. But for these judicial proceedings, DWR would not have had possession of or had to keep the snakes and the snakes would not have died.

¶ 33 The Hoyers argue that the death of the snakes did not actually arise out of the prosecution of a judicial proceeding because only photographs of the snakes, not the snakes themselves, were actually introduced as evidence in the trial. In their opinion, because DWR did not use the actual snakes in the criminal proceeding, their death did not arise out of the judicial proceeding.

¶ 34 There is, however, no necessity provision in the statute. As we have stated, when we interpret a statute, we seek to give effect to the purpose and intent of the legislature. *Grappendorf*, 2007 UT 84, ¶ 9, 173 P.3d 166. Nothing in the language of the statute suggests that the legislature wanted to make immunity contingent on an assessment of the necessity of the immune act to the judicial proceeding. If the statute allows the government to retain immunity for injuries arising out of judicial proceedings even if "malicious or without probable cause," Utah Code Ann. § 63–30d–301(5)(e), we see no reason to believe that the legislature intended for us to insist on a showing of necessity to the judicial proceeding before we recognize an exception to the waiver of immunity for negligence. As we have previously stated, " '[T]his court cannot ignore or strike

down an act because it is either wise or unwise. The wisdom or lack of wisdom is for the legislature to determine.'" *Gottling v. P.R. Inc.*, 2002 UT 95, ¶ 23, 61 P.3d 989 (quoting *Masich v. U.S. Smelting, Refining, & Min. Co.*, 191 P.2d 612, 625 (Utah 1948)). Our inquiry is not what the legislature should do, but rather what the legislature has done. *Id.* We therefore conclude that the death of the snakes arose out of the institution or prosecution of a judicial proceeding and that the exception to the waiver of immunity for negligence applies.

## CONCLUSION

¶ 35 We find that the Hoyers' appeal was timely filed because the district court granted their motion for an extension of time to file. We grant the Hoyers' motion to amend their brief and deny DWR's motion to strike portions of the Hoyers' brief for failure to cite to the record. We hold that DWR is immune from suit for the death of the snakes under the exception to the waiver of negligence for injuries arising out of the institution or prosecution of judicial proceedings. We therefore affirm the district court's grant of summary judgment to DWR.

¶ 36 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Justice PARRISH concur in Justice NEHRING'S opinion.