2010 UT App 265

Walter Michael ANDRUS, Trustee of the Mary Elizabeth Andrus Nevada Trust, Plaintiff and Appellant,

v.

The NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, Defendant.

No. 20090893–CA.

Court of Appeals of Utah.

Sept. 30, 2010.

Walter Michael Andrus, Hurricane, Appellant Pro Se.

Brady T. Gibbs, Draper, for Appellee.

Before Judges DAVIS, VOROS, and CHRISTIANSEN.

## OPINION

DAVIS, Presiding Judge:

¶ 1 Plaintiff Walter Michael Andrus (Andrus) appeals the trial court's order granting Rebekah Andrus's (daughter-in-law) motion for partial summary judgment. We affirm.

## BACKGROUND

¶ 2 In August 2001, Jared Andrus (son) and daughter-in-law purchased a term life insurance policy (the Insurance Policy) from Northwestern Mutual Life Insurance Company (Northwestern) with a paid-on-death benefit in the amount of $500,000. Son was listed as the owner of the Insurance Policy, while daughter-in-law was designated as the direct beneficiary to one hundred percent of the proceeds. Son and daughter-in-law paid all the premiums on the Insurance Policy.

¶ 3 In late 2006, son became ill, and in May 2007 he was diagnosed with cancer. In June 2007, due to his declining health, son petitioned the trial court to appoint Andrus as his legal guardian. Shortly thereafter, in July 2007, the trial court issued findings of fact, conclusions of law, and an order appointing Andrus as son's legal guardian. In so doing, the trial court found that "[t]here are no other proceedings in any other courts that could affect the current proceedings," and "[t]he total value of [son]'s estate which will come into the possession of [Andrus] is $9,000."

¶ 4 Approximately one week after being appointed as son's legal guardian, Andrus completed a Designation of Beneficiaries by Owner for Death Proceeds Only (the beneficiary change form) in an attempt to reduce daughter-in-law's share of the death proceeds from one hundred percent to fifteen percent.[1] Andrus admitted that son had not directed him to change the beneficiary designation, that son had never seen the beneficiary change form, and that son did not know it existed.[2] Despite this, Andrus signed the beneficiary change form in his capacity as son's legal guardian. Andrus did not, however, submit the form to Northwestern at this time.

¶ 5 On November 30, 2007, the trial court terminated Andrus's guardianship. Less than one month later, son died. In the month preceding son's death, the beneficiary change form remained in a drawer and was never shown to or signed by son. After son died, Andrus finally delivered the beneficiary change form to Northwestern.

¶ 6 When Northwestern subsequently refused to pay the death benefit, Andrus initiated legal action. After removing the case to the federal district court, Northwestern paid the proceeds of the Insurance Policy to the court and was dismissed from the action. Daughter-in-law was joined in the action and filed a cross-claim against Andrus seeking, inter alia, declaratory relief that she was entitled to one hundred percent of the proceeds of the Insurance Policy. Thereafter, Andrus and daughter-in-law filed cross-motions for summary judgment on the issue of declaratory relief. Prior to ruling on the cross-motions, the federal district court remanded the case to the Fifth District court. The Fifth District court subsequently granted partial summary judgment in favor of daughter-in-law and declared that she is entitled to one hundred percent of the proceeds from the Insurance Policy. Andrus now appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 7 Andrus argues that the trial court erred in granting partial summary judgment in favor of daughter-in-law.[3] This court "review[s] a summary judgment determination for correctness, granting no deference to the [district] court's legal conclusions." *Salt Lake Cnty. v. Holliday Water Co.*, 2010 UT 45, ¶ 14, 234 P.3d 1105 (second alteration in original) (internal quotation marks omitted).

## ANALYSIS

¶ 8 Andrus contends that the trial court erred in granting daughter-in-law's motion for summary judgment because, as son's court-appointed legal guardian, Andrus was vested with the authority to change the Insurance Policy's beneficiary designation. Specifically, Andrus argues that the "broad" guardianship powers enumerated in Utah Code section 75–5–312, *see* Utah Code Ann. § 75–5–312 (1993), include the authority to change the Insurance Policy's beneficiary designation, despite the fact that no such change was provided for in the trial court's order of appointment.[4] Daughter-in-law counters that section 75–5–312 is not sufficiently broad to bestow such power to Andrus but, rather, "the issue of changing [son]'s life insurance beneficiary designation should have been raised before the court in either the guardianship action or through a subsequent protective proceeding." We agree.

1. The remaining eighty-five percent of the proceeds were to be used to fund a trust established by Andrus for son and daughter-in-law's child.

2. These admissions occurred during Andrus's deposition.

3. Andrus also argues that "[t]he trial court *may* . . . have erred by granting summary judgment for [daughter-in-law] based on disputed material facts." (Emphasis added.) This claim is inadequately briefed. Accordingly, we do not address

it. *See Daniels v. Gamma W. Brachytherapy*, 2009 UT 66, ¶ 52, 221 P.3d 256 (declining to address an issue that had been inadequately briefed).

4. Andrus cites *In re Boyer*, 636 P.2d 1085 (Utah 1981), for the proposition that the supreme court "has affirmed the broad scope of powers which may be granted to a court-appointed guardian." *Boyer*, however, is easily distinguishable and has little applicability to this case.

¶ 9 Utah Code section 75–5–312 outlines the general powers and duties of the guardian of an incapacitated person:

> (1) A guardian of an incapacitated person has only the powers, rights, and duties respecting the ward granted in the order of appointment under Section 75–5–304. (2) Absent a specific limitation on the guardian's power in the order of appointment, the guardian has the same powers, rights, and duties respecting the ward that a parent has respecting the parent's unemancipated minor child [5] .... In particular, and without qualifying the foregoing, a guardian has the following powers and duties, except as modified by order of the court:
>
> ....
>
> (b) If entitled to custody of the ward the guardian shall provide for the care, comfort, and maintenance of the ward and, whenever appropriate, arrange for the ward's training and education. Without regard to custodial rights of the ward's person, the guardian shall take reasonable care of the ward's clothing, furniture, vehicles, and other personal effects and commence protective proceedings if other property of the ward is in need of protection.

*Id.* § 75–5–312. According to the plain language of section 75–5–312, the statute clearly distinguishes between matters of care and matters involving property. Furthermore, the plain language limits the scope of a guardian's authority to those powers granted in the order of appointment. *See id.* § 75–5–312(1). Accordingly, a guardian's authority includes only the powers granted in the order of appointment that relate to the basic care of the ward, i.e., providing for the ward's comfort, maintenance, and educational needs. *See id.* § 75–5–312(1), (2)(b). A

guardian's authority does not extend to a ward's property other than certain enumerated personal items and other personal effects. *See id.* § 75–5–312(2)(b). Rather, section 75–5–312(2)(b) requires a guardian to "commence protective proceedings if ... property [other than clothing, vehicles, furniture, and other personal items] of the ward is in need of protection." *Id.*

¶ 10 As correctly noted by daughter-in-law, Utah Code sections 75–5–401 to –408 provide the appropriate mechanism by which the guardian of an incapacitated person may obtain power over a ward's property, including a life insurance policy. Indeed, section 75–5–401 provides that

> [a]ppointment of a conservator or other protective order may be made in relation to the estate and affairs of a person if the court determines that the person:
>
> (a) is unable to manage the person's property and affairs ... and
>
> (b) has property which will be wasted or dissipated unless proper management is provided....

*Id.* § 75–5–401(2) (Supp.2010). Moreover, by initiating a protective proceeding under section 75–5–401, a guardian may petition the court for a broad range of powers over the property of an incapacitated person, which authority includes

> all the powers over [the protected person's] estate and affairs which he could exercise if present and not under disability, except the power to make a will. These powers include ... the power to ... exercise [the protected person's] rights to ... *change beneficiaries under insurance and annuity policies* ....

*Id.* § 75–5–408(1)(c) (1993) (emphasis added).

 ¶ 11 Our interpretation of the statutory language is underscored when the statute

5. Without citing any supporting legal authority, Andrus contends that the parent of an unemancipated minor has the authority to change the beneficiary of the minor's life insurance policy. Because the statute gives the guardian of an incapacitated person the same authority as the parent of an unemancipated minor, Andrus reasons, the guardian of an incapacitated person also has the power to change the beneficiary of that person's life insurance policy. But, in fact, Utah Code section 75–5–209 requires a guardian of a minor (who also has the same powers and responsibilities as a parent) to undertake protective proceedings to protect property other than personal effects. *See* Utah Code Ann. § 75–5–209(2), (3)(b) (Supp.2010). For the foregoing reason, and because Andrus has provided no supporting legal authority or meaningful analysis for his proposition, we decline to address it further. *See Daniels,* 2009 UT 66, ¶ 52, 221 P.3d 256.

is considered "as a whole, and its provisions interpreted in harmony with other provisions in the same statute and with other statutes under the same and related chapters." *State v. Schofield*, 2002 UT 132, ¶ 8, 63 P.3d 667 (internal quotation marks omitted). For example, if, as Andrus contends, section 75-5-312 grants a guardian the authority to change the beneficiary designation of a ward's life insurance policy, the language in that same section requiring that a guardian initiate protective proceedings to protect a ward's property would be rendered meaningless. Moreover, such a reading would render sections 75-5-401 to -408—which specifically grant a guardian the authority to change the beneficiary designation of a ward's life insurance policy pursuant to protective proceedings—mere surplusage under the facts of this case. "In conducting a textual analysis, [the reviewing court] . . . avoid[s] interpretations that will render portions of a statute superfluous. . . ." *Hoyer v. State*, 2009 UT 38, ¶ 22, 212 P.3d 547.

¶ 12 In this case, the trial court's order of appointment limited Andrus's guardianship authority over property matters to son's $9000 estate. *See generally* Utah Code Ann. § 75-5-312 ("A guardian . . . has only the powers . . . granted in the order of appointment. . . ."). Moreover, the Insurance Policy does not fall within the category of "clothing, furniture, vehicles, and other personal effects" which would clearly be subject to Andrus's guardianship authority pursuant to section 75-5-312, *see id.* § 75-5-312(2)(b). Accordingly, we conclude that Andrus was obligated to commence protective proceedings if he believed that the Insurance Policy was in need of protection, which he did not do. The trial court therefore correctly concluded, as a matter of law, that Andrus lacked the authority to change the beneficiary designation on the Insurance Policy and that daughter-in-law was entitled to one hundred percent of the proceeds. The trial court's grant of partial summary judgment in favor of daughter-in-law was not error.

## CONCLUSION

¶ 13 Under the plain language of Utah Code section 75-5-312, a guardian's authority is limited to that granted in the order of appointment. Moreover, a guardian must commence protective proceedings in order to obtain authority over property, other than personal items, that he believes is in need of protection. Andrus failed to commence a protective proceeding, and the trial court's order limited his power to son's $9000 estate. Accordingly, the trial court correctly concluded that daughter-in-law was entitled to one hundred percent the proceeds of the Insurance Policy. Affirmed.

¶ 14 WE CONCUR: J. FREDERIC VOROS JR. and MICHELE M. CHRISTIANSEN, Judges.